**CADLE COMPANY, Plaintiff, Appellee,**

v.

**John J. HAYES, III, Defendant, Appellant.**

**No. 97–1252.**

United States Court of Appeals, First Circuit.

Heard June 5, 1997.

Decided June 26, 1997.

John J. Kuzinevich, with whom Ellen Rappaport Tanowitz and Kuzinevich & Miller, P.C., Boston, MA, were on brief, for Defendant, Appellant.

Warren J. Hurwitz, with whom Goodman, Greenzang & Hurwitz, Chestnut Hill, MA, was on brief, for Plaintiff, Appellee.

Before SELYA, Circuit Judge, CYR, Senior Circuit Judge, and KEETON,* District Judge.

SELYA, Circuit Judge.

This diversity case involves a $150,000 promissory note, the conditions of its repayment, and a heated dispute between the parties about whether the debt has been satisfied. The court below thought not and entered summary judgment in favor of the noteholder. We affirm.

## I. A TALE OF TWO LETTERS

In the summer of 1990, defendant-appellant John J. Hayes, III, executed a promissory note for $150,000, secured by a mortgage on premises owned by a real estate trust that he controlled.[1] The lender subsequently failed and plaintiff-appellee Cadle Company (C–Co.) acquired the note (which was then in

---

* Of the District of Massachusetts, sitting by designation.

1. There is some uncertainty about whether Hayes signed the note personally or in his capacity as a trustee of the real estate trust. The point is of purely academic interest, however, as Hayes, acting for himself, also executed an unlimited guaranty.

arrears) from the Federal Deposit Insurance Corporation (FDIC). Cecil C. Cadle (Cadle), C–Co.'s vice president, informed Hayes of the transfer and the parties commenced negotiations. The preliminary haggling is of no consequence because the parties reached an agreement and reduced it to writing. Cadle wrote a letter on February 2, 1993, which stated in pertinent part:

> This will confirm our agreement that The Cadle Company will delay the repayment period of the subject loan until February 10, 1994 if we receive $80,000 by March 2, 1993.
>
> The Cadle Company purchased your loan from the FDIC in liquidation of Boston Trade Bank and has full authority to release the lien on the real estate in return for this $80,000 payment. We hereby agree to release the lien upon payment of the $80,000 by March 2, 1993.

The appellant signed the letter the same day, thereby indicating his assent to the proposed terms.

On March 3, Landmark Bank mailed a bank check for $80,000 to C–Co.[2] The accompanying transmittal letter, over the signature of James Goodrich, a Landmark vice president, stated in its entirety: "Enclosed is a check for $80,000 to satisfy in full the loan you acquired from the FDIC between the Boston Trade Bank and John J. Hayes. Please execute a release and forward it to me as soon as possible. Thank you very much for your help." Cadle endorsed and deposited the check and forwarded a release of the mortgage lien as previously agreed. Hayes made no further payments.

In September 1994 C–Co. sued Hayes and a co-guarantor, Kevin O'Reilly, in federal district court, seeking to recover the balance due on the promissory note, plus accrued interest and collection costs.[3] The battle lines were quickly drawn: Hayes insisted that the $80,000 payment had satisfied in full his obligations under the note, whereas C–Co. insisted with equal adamance that the payment did no more than comply with the terms of the February 2 letter agreement (which merely deferred, rather than canceled, the obligation to pay the balance due under the note).

To make a tedious tale tolerably terse, the parties agreed to have a magistrate judge, rather than a district judge, preside over the case. *See* 28 U.S.C. § 636(c)(1) (1994); Fed. R.Civ.P. 73(b). Thereafter, C–Co. moved for summary judgment, proffering, among other supporting documents, the February 2 letter agreement. Hayes filed an opposition and an affidavit. When C–Co. produced Goodrich's sworn statement that he had not negotiated with either Hayes or Cadle about repayment of the loan and that he had not been privy to any agreement that the $80,000 payment would discharge the entire debt, Hayes filed a supplemental affidavit. The magistrate reviewed these and other materials, discerned no genuine issue of material fact, granted C–Co.'s motion, and entered judgment for a sum certain. This appeal followed.

## II. ANALYSIS

This appeal requires little more than an inquiry into the permutations of the summary judgment standard. We begin with some general principles and then move to a more case-specific appraisal.

### A.

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the nonmovant and indulg[es] all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment. *See Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987).

---

**2.** Although this check was sent one day later than the outside date specified in the February 2 letter agreement, neither party contends that this delay matters and we deem any discrepancy to be waived.

**3.** O'Reilly is not a party to this appeal and we abjure any further reference to him.

■ The summary judgment machinery operates in two phases. First, the movant must make a preliminary showing that there is no genuine issue of material fact which requires resolution in the crucible of a trial. Once this showing has been made, the burden shifts to the nonmovant to demonstrate, through specific facts, that a trialworthy issue remains. *See National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995); *Maldonado–Denis,* 23 F.3d at 581.

■ For the purpose of summary judgment, an issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." *Maldonado–Denis,* 23 F.3d at 581 (citations and internal quotation marks omitted). For the same purpose, "material" facts are those which possess "the capacity to sway the outcome of the litigation under the applicable law." *National Amusements,* 43 F.3d at 735. Still, establishing a genuine issue of material fact requires more than effusive rhetoric and optimistic surmise. "If the evidence [adduced in opposition to the motion] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In other words, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). "[C]onclusory allegations, improbable inferences, and unsupported speculation" will not suffice. *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

We proceed to apply these tested principles to the record before us, mindful that we review the lower court's order de novo. *See Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

*B.*

■ The case for summary judgment is simple and straightforward. C–Co. says that Hayes owed money on the promissory note; that it agreed to *defer* a portion of the indebtedness and release a security interest if Hayes made a partial payment of $80,000; that the terms of this deferral were commemorated in the February 2 letter agreement; and that, the period of the deferment having elapsed, Hayes must now pay the balance due under the note. Hayes does not deny the authenticity of the February 2 letter agreement [4] but nonetheless contends that a genuine issue of fact exists as to whether the $80,000 payment was made and accepted in full satisfaction of the entire indebtedness. We think that the purported "proof" which Hayes has assembled to substantiate his position is of a caliber which courts regularly have held insufficient to defeat a summary judgment motion.

On this record, certain facts cannot be gainsaid: the promissory note was validly executed, it was not paid according to its tenor, and its ownership was properly transferred to C–Co. The February 2 letter agreement commemorates the parties' mutual assent to an alternative payment arrangement and that document contains the signatures of both parties—signatures which Hayes does not allege were procured by fraud, chicanery, coercion, duress, or other untoward means. That agreement, on its face, is clear and unambiguous. Moreover, it reflects valid consideration given and received. It nowhere suggests that an $80,000 payment by Hayes will discharge the indebtedness in full; to the contrary, it states quite plainly that the receipt of $80,000 on or before a day certain will enable the obligor to defer repayment of the underlying debt for approximately one year and will bring about the immediate release of the mortgage lien which secured the debt.

The short of it is that, by presenting the letter agreement in support of its motion for *brevis* disposition, C–Co. discharged its initial

---

4. To be sure, the appellant alludes vaguely to certain prior negotiations, but these cannot influence our decision as any such negotiations were clearly superseded by the execution and delivery of the letter agreement. *See, e.g., Brennan v. Carvel Corp.,* 929 F.2d 801, 806 (1st Cir.1991); *Amerada Hess Corp. v. Garabedian,* 416 Mass. 149, 617 N.E.2d 630, 634 (1993).

burden under Rule 56. The question, then, is whether Hayes, as the party opposing summary judgment, succeeded in adducing specific facts demonstrating that a trialworthy issue remains on some material fact.

■ Hayes argues that there is a genuine issue as to the nature of the $80,000 payment. But this argument comprises more cry than wool. First, he labors to create the impression that the parties entered into a series of negotiations apart from the February 2 letter agreement, and that these negotiations culminated in a new understanding that a one-time payment of $80,000 would discharge the entire debt. The problem with this approach is that it consists entirely of gauzy generalities: in his affidavits, Hayes does not say *when* or *how* this arrangement was consummated. Moreover, he does not claim that he and Cadle entered into such an arrangement personally; indeed, he does not even suggest that the two of them discussed the matter at all between February 2 and March 3. He does state that Cadle and Goodrich "had numerous conversations" during February of 1993, but this statement—which in all events is apparently based on something less than personal knowledge—proves nothing. Hayes nowhere relates the details of any such conversations, nor does he indicate that Goodrich was authorized to act as an agent on his behalf. In the absence of specific facts, Hayes' innuendoes, heatedly denied by C–Co. and refuted by Goodrich, are inadequate to block summary judgment.[5] *See, e.g., Maldonado–Denis,* 23 F.3d at 583; *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479–81 (1st Cir.1993); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825–26 (1st Cir.1991).

The appellant's ace in the hole, as he envisions it, is Goodrich's transmittal letter. We do not believe that this communiqué, repudiated by its author, can trump the February 2 letter agreement. After all, Goodrich has signed an affidavit flatly rejecting Hayes' interpretation of his (Goodrich's) letter and asserting that he never negotiated any agreement with either party as to the nature of the $80,000 payment. Since Goodrich's March 3 epistle lacks any evidence of mutual assent by the parties, and since the record does not otherwise supply any such evidence, the epistle cannot carry the day.[6]

■ To be sure, Hayes states in the climactic paragraph of his main affidavit that:

> I *believe* that the Cadle Company took the $80,000.00 from Landmark Bank under the terms of an agreement between the Cadle Company and the Bank that the $80,000.00 would constitute payment in full of all of the *obligations* of the trust and the guarantors under the terms of the Note. [Emphasis supplied.]

However, neither Cadle nor Landmark acknowledge that any such agreement ever existed. Thus, Hayes' *contrary conclusion* lacks force. Statements made upon information and belief, as opposed to personal knowledge, are not entitled to weight in the summary judgment balance. *See Griggs–Ryan v. Smith,* 904 F.2d 112, 117–18 (1st Cir.1990); *see also* Fed.R.Civ.P. 56(e).

In sum, Hayes' "proof" is bereft of any significant probative value. Consequently, we agree with the lower court that a reasonable factfinder could not conclude on this record that the clear and unambiguous agreement between the parties made in February 1993 had been varied thereafter.

## C.

■ Shifting rhetorical gears, the appellant makes another tour around the track, attempting to persuade us that an accord and satisfaction existed between the parties which relieved him of any further obligations

---

5. Withal, the appellee's attempt to discount Hayes' affidavits as "self-serving" misses the mark. A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment. *See Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 706 (1st Cir.1993). The difficulty with Hayes' affidavits is not that they are self-serving but that they neither contain enough specifics nor speak meaningfully to matters within Hayes' personal knowledge.

6. The fact that C–Co. deposited the $80,000 check proves nothing, as that action was entirely consistent with the provisions of the February 2 letter agreement.

under the promissory note. This is the same old whine in a slightly different bottle.

 Under Massachusetts law, an accord and satisfaction exists when:

(1) [ ] there has arisen between the parties a bona fide dispute as to the existence or extent of liability; (2)[ ] subsequent to the arising of that dispute the parties entered into an agreement under the terms of which the dispute is compromised by the payment by one party of a sum in excess of that which he admits he owed and the receipt by the other party of a sum less in amount than he claims is due him, all for the purpose of settling the dispute; and (3) a performance by the parties of that agreement.

*Rust Eng'g Co. v. Lawrence Pumps, Inc.*, 401 F.Supp. 328, 333 (D.Mass.1975). The evidence before us shows as a matter of law that no accord and satisfaction transpired here.

 In the first place, the record reveals no dispute as to the extent of Hayes' liability under the promissory note at the time of this asserted accord; the amount of indebtedness was not then in question, merely the method by which repayment would occur. In the second place, the appellant has proffered no significantly probative evidence—only Hayes' bare allegations, already considered and found wanting—that the parties entered into the sort of mutual agreement that could form the basis for an accord and satisfaction.[7] Massachusetts law is pellucid that, in the absence of convincing evidence of mutual assent, mere partial payment of an existing debt does not constitute an accord and satisfaction. *See Emerson v. Deming*, 304 Mass. 478, 23 N.E.2d 1016, 1018–19 (1939); *Lipson v. Adelson*, 17 Mass.App.Ct. 90, 456 N.E.2d 470, 471–74 (1983).

### III. CONCLUSION

We need go no further. A party faced with a properly documented summary judgment motion should not be able to keep his

7. On this point, Hayes' case stands in stark contrast to *Bud McDevitt Real Estate, Inc. v. Corona*, 27 Mass.App.Ct. 1129, 537 N.E.2d 608, 609 (1989), in which the Appeals Court held that a letter *from one party to another*, explicitly stating

case on life support merely by hurling conclusory allegations in the movant's direction. So it is here: the appellant's rhetorical flourishes are not sufficiently probative to create a genuine issue of material fact concerning the nature of the $80,000 payment. Hence, the magistrate appropriately granted C–Co.'s motion for summary judgment.

*Affirmed. Costs to appellee.*

that cashing an enclosed check would constitute settlement of any and all claims, ripened into an accord and satisfaction when the check was deposited.