**MORAN TOWING CORP. and
Petroleum Transport
Corp., Plaintiffs,**

v.

**GIRASOL MARITIMA SA, INC.; Kyo Kuto Shipping Co.; Mitsui O.S.K. Lines; M/V Brilliant Ace; and United States of America, Defendants.**

No.  CIV.  A.  99–12509–JLT.

United States District Court,
D. Massachusetts.

May 8, 2001.

Stewart S. Richmond, Jr., McLane, Graf, Raulerson & Middleton, Manchester, NH, David Wolowitz, McLane, Graf, Raulerson & Middleton, Portsmouth, NH, for Moran Towing Corp., Petroleum Transport, Plaintiffs.

Rosalyn Garbose, Attorney General's Office, Robert E. McDonnell, Thomas H. Walsh, Jr., Rosalyn E. Garbose, Bingham, Dana & Gould, Boston, MA, Peter G. Myer, Torts Branch Civil Division, U.S. Department of Justice, Washington, DC, for Girasol Maritima SA, Kyo Kuto Shipping Co, Mitsui O.S.K. Bulk Shipping Inc., Mitsui O.S.K. Lines (America) Inc., as owners and/or operators of M/V Brilliant Ace, in Personam, M/V Brilliant Ace, her engines, tackle, etc., USA, Defendants.

## MEMORANDUM

TAURO, District Judge.

### BACKGROUND

Plaintiff Moran Towing Corp. ("Moran") owns the M/V MARY TURECAMO, and Plaintiff Petroleum Transport Corp. ("Petroleum") owns the barge FLORIDA. Plaintiffs sue Defendants Girasol Maritima SA and Kyo Kuto Shipping Co. Ltd., owners of the M/V BRILLIANT ACE; and the United States of America ("U.S."), controller of the Cape Cod Canal.

Plaintiffs allege that in August 1999, while the MARY TURECAMO was towing the FLORIDA eastbound through the Cape Cod Canal, the BRILLIANT ACE passed the vessels at an excessive speed.

The MARY TURECAMO consequently ran aground, and both the MARY TURECAMO and the FLORIDA were damaged.

Plaintiffs claim that, at the time of the accident, the BRILLIANT ACE was exceeding set speed limits. Plaintiffs also contend that the Government breached its duty to safely and properly regulate vessel traffic through the Canal by allowing the BRILLIANT ACE to exceed speed limits and by allowing the BRILLIANT ACE and the MARY TURECAMO to simultaneously transit the Canal. Plaintiffs claim that the Government knew or should have known that hydrodynamic forces when the two vessels passed one another would cause an accident.

The U.S.'s Motion for Summary Judgment is before the court.

### DISCUSSION

The U.S. moves for Summary Judgment on the ground that it is immune from Plaintiffs' claims because the marine-traffic controllers overseeing the Canal acted within their discretion at the time of the accident. Plaintiffs counter that the controllers were performing ministerial functions when the accident occurred, thus exposing the U.S. to tort liability.

Summary Judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[1] When deciding a Summary–Judgment Motion, the court examines the record "in the light most flattering to the non-movant and indulge[s] all reasonable inferences in that party's favor."[2]

Plaintiffs sue under the Suits in

---

[1] Fed.R.Civ.P. 56(c).

[2] *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997).

Admiralty Act,[3] which is subject to the Federal Tort Claims Act's[4] discretionary-function exception.[5] Although the Federal Tort Claims Act (FTCA) waives sovereign immunity for tort claims brought against the Government, it has exceptions. The discretionary-function exception withdraws the waiver of immunity where the challenged government action involves the exercise of discretion.[6]

The Supreme Court has provided guiding principles for determining whether the discretionary-function exception applies.[7] Courts first look to "the nature of the conduct rather than the status of the actor," and determine whether the conduct involves an element of judgment or choice.[8] Second, if the challenged conduct involves discretion, courts consider whether the judgment is "of the kind that the discretionary-function exception was designed to shield," i.e. one based on public-policy considerations.[9]

The Supreme Court's reading of the exception "admittedly has not followed a straight line," despite these guiding principles.[10] The Supreme Court's decisions in *Berkovitz v. United States*[11] and *United States v. Varig Airlines*,[12] however, perhaps best illustrate the contours of the discretionary-function exception.

In *Berkovitz*, the plaintiff sued the U.S. after he contracted a severe case of polio from an oral-polio vaccine.[13] The plaintiff alleged that the U.S. violated federal law when it licensed the vaccine and approved the public release of a particular vaccine lot.

The Supreme Court first considered whether the vaccine-licensing process fell within the exception. Federal regulations dictated that the National Institutes of Health Division of Biologic Standards (DBS) issue a license only when the manufacturer shows that the vaccine meets established safety standards. DBS licensed the polio vaccine without the proper showing. Because the regulations mandated the showing required before a license may issue, the Court held that the licensing decision was non-discretionary and that the U.S. could be liable.[14]

The Supreme Court next considered whether the Food and Drug Administration's Bureau of Biologics ("Bureau") had discretion when approving the public release of the vaccine lot. Unlike the licensing regulations, the release-approval regulations placed responsibility for ensuring safety standards were met on the vaccine manufacturers, rather than on the Bureau. Although the regulations empowered the Bureau to examine vaccine lots and pre-

---

**3.**  46 App.U.S.C. §§ 741–52 (2000).

**4.**  28 U.S.C. § 2680(a) (2000).

**5.**  *See Wiggins v. United States*, 799 F.2d 962, 966 (5th Cir.1986).

**6.**  *See* 28 U.S.C. § 2680(a).

**7.**  *See Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *United States v. Gau-*

*bert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

**8.**  *Varig*, 467 U.S. at 813, 104 S.Ct. 2755.

**9.**  *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.

**10.**  *Varig*, 467 U.S. at 811, 104 S.Ct. 2755.

**11.**  486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

**12.**  467 U.S. at 797, 104 S.Ct. 2755.

**13.**  *Berkovitz*, 486 U.S. at 533, 108 S.Ct. 1954.

**14.**  *See id.* at 542–45, 108 S.Ct. 1954.

vent the distribution of a noncomplying lot, the Bureau could determine when and how to do so. The Court held that, in this regulatory context, the discretionary-function exception bars any claims challenging the release-approval process.[15]

The Court made a similar distinction in *Varig*, which resolved two tort cases brought by airplane-accident victims.[16] The victims claimed that the Federal Aviation Administration (FAA) certified that the airplanes complied with safety standards when they did not. The regulatory scheme authorized the Secretary of Transportation to establish and implement a program to enforce airplane-safety-compliance standards.[17] The FAA devised a compliance-review process that included a "spot-check" system, where engineers picked certain airplanes to inspect for compliance; and a certification process, where the FAA certified aircraft design and manufacture. At all times, however, the regulations placed the responsibility of safety-standards compliance on the manufacturer.[18]

Recognizing that primary responsibility for safety compliance was on the manufacturer, the Supreme Court held that how the FAA implements and enforces its compliance-review system is a "plainly discretionary activity of the 'nature and quality' protected" by the FTCA.[19] The Court noted that the FAA made judgments on which aircraft to spot check, and "the FAA's alleged negligence in failing to check certain specific items in the course of certifying a particular aircraft falls squarely within the discretionary function exception." [20]

Plaintiffs here claim that the U.S. was negligent by: (1) permitting the BRILLIANT ACE and MARY TURECAMO (with the FLORIDA in tow) to simultaneously transit the Canal; and (2) failing to enforce the speed limits set for Canal traffic.

### A. General Regulatory Scheme

Federal regulations provide that the U.S. Army Corps of Engineers ("Corps") operate the Canal, with vessel traffic supervised by the Corps Division Engineer or the Engineer–in–Charge of the Canal.[21] Regulations require the Division Engineer or the Engineer–in–Charge to prescribe rules governing the size of vessels that may transit the Canal and any special requirements that govern vessel movement through the Canal.[22] The Engineer–in–Charge, through the marine-traffic controller on duty, is charged with interpreting and enforcing the regulations and with monitoring Canal traffic.[23] Although the regulations give the Corps the authority to enforce these standards, the duty to comply with applicable navigation rules is on the vessels.[24]

### B. Two–Way Passage

■ The U.S. first argues that it is entitled to Summary Judgment on Plaintiffs two-way passage claim because the marine-traffic-controller's decision to permit the vessels to simultaneously transit the

---

**15.** *See id.* at 546, 108 S.Ct. 1954.

**16.** *Varig,* 467 U.S. at 799, 104 S.Ct. 2755.

**17.** *See id.* at 804, 104 S.Ct. 2755.

**18.** *See id.*

**19.** *Id.* at 819, 104 S.Ct. 2755.

**20.** *Id.* at 820, 104 S.Ct. 2755.

**21.** *See* 33 C.F.R. § 207.20(b)(1).

**22.** *See id.*

**23.** *See id.* at § 207.20(b)(2).

**24.** *See id.* at § 207.20(k)(1).

Canal was discretionary. Plaintiffs do not respond to this argument, but merely claim that the Corps should have realized that the hydrodynamic pull of the vessels would cause an accident. For purposes of Summary Judgment, we take as true Plaintiffs' claim that the marine-traffic-controller's decision was negligent.

The regulations dictate that vessels 65 feet in length and over obtain clearance before entering the Canal.[25] Vessels generally are given clearance in the order they arrive, "except when conditions warrant one-way traffic."[26] The Navigation Regulations and General Information Pamphlet states that:

14. TWO WAY TRAFFIC—Two way traffic through the Canal will be allowed when, in the opinion of the Division Engineer's representative charged with controlling traffic, conditions are suitable.

The regulations clearly allow the marine-traffic controller to decide, based on conditions, whether to permit two-way traffic in the Canal.[27] Like the regulations in *Varig*, they do not prescribe the process marine-traffic controllers must follow to make this decision. Because the marine-traffic controller exercised his judgment when permitting the BRILLIANT ACE and the MARY TURECAMO to simultaneously transit the Canal, the discretionary-function exception applies, and the U.S. is immune from the claim.

### C. Speed

■ The U.S. next argues that it is entitled to Summary Judgment on Plaintiffs' claim that the U.S. breached its duty to enforce the speed limits on the Canal, thus allowing the BRILLIANT ACE to speed through the Canal. The U.S. contends that it is immune from the claim because how and when marine-traffic controllers enforce the speed restrictions are discretionary decisions. Again for Summary–Judgment purposes, we take as true Plaintiff's claim that the BRILLIANT ACE was speeding at the time of the accident.

The regulations set speed limits that must be observed by all vessels. The limits are based on running time, rather than knots, meaning a vessel arriving earlier than the minimum running time exceeded the speed limit:

The minimum running time for the land cut between the East Mooring Basin (Station 35) and the Administration Office in Buzzards bay (Station 388) is prescribed as follows:

Head Tide—60 Minutes

Fair Tide—30 Minutes

Slack Tide—45 minutes

The minimum running time between the Administration Office (Station 388) and Hog Island Channel westerly entrance Buoy No. 1 (Station 661) is prescribed as follows:

Head Tide—4 Minutes

Fair Tide—23 Minutes

Slack Tide—35 Minutes[28]

Like the FAA compliance regulations in *Varig*, the navigation regulations authorize the Corps to fashion rules governing vessel traffic through the Canal.[29] They also charge the Corps with enforcing the rules and monitoring traffic through the Canal.[30]

25. *See id.* at § 207.20(g)(2)

26. *Id.* at § 207.20(g)(3).

27. *See id.*

28. *Id.* at § 207.20(j).

29. *See id.* at § 207.20(b)(1).

30. *See id.* at § 207.20(b)(2).

Similar to both the release-approval regulations in *Berkovitz* and the compliance regulations in *Varig*, the navigation regulations do not dictate how the Corps must implement and enforce the rules. Implementation and enforcement, rather, are left to the Corps discretion. Finally, as with the regulations in *Berkovitz* and *Varig*, primary responsibility for complying with the established minimum-running times is on the vessels, not on the Corps.[31]

But Plaintiffs here do not challenge the U.S.'s means of enforcement as did the *Berkovitz* and *Varig* plaintiffs. They challenge the fact that the U.S. has no means of enforcing its minimum running times. In support of their argument, Plaintiffs point to depositions taken of the two marine-traffic controllers on duty the day of the accident, both of whom testified they did not know the minimum running times or have a universal mechanism for calculating them. Controller Fred Danhauser testified that he enforces a 10 mile-per-hour-speed limit "over the water" for Canal traffic.[32] Controller Robert Orman stated that he enforces a 10 mile-per-hour-speed limit "over the land" for Canal traffic.[33] Further disagreement apparently exists on the locations of measuring points for the minimum running times.[34]

The regulations require the Corps to enforce the rules it prescribes.[35] How the Corps enforces its rules clearly is discretionary, but that means are in place to enforce the rules is not. Summary Judgment, therefore, is inappropriate.

### CONCLUSION

The U.S.'s decision to permit the BRILLIANT ACE and the MARY TURECA-

MO to simultaneously transit the Canal was discretionary. Its failure to implement any speed enforcement mechanism was not. Accordingly, the U.S.'s Summary Judgment Motion is ALLOWED on Plaintiffs' two-way-passage claim and DENIED on Plaintiffs' speed claim.

---

**31.** *See id.* at § 207.20(k)(1).

**32.** Danhauser Dep. at 20:23–21:4.

**33.** Orman Dep. at 25:17–20.

**34.** *See* Danhauser Dep. at 26:2–11.

**35.** *See* 33 C.F.R. § 207.20(b)(2).