Louis C. TALARICO, II, Plaintiff

v.

**MARATHON SHOE COMPANY, Defendant**

No. CIV.00–239–P–C.

United States District Court, D. Maine.

Oct. 21, 2002.

36

James G. Goggin, Verrill & Dana, Portland, ME, Jon Holder, Holder & Grover, Portland, ME, for Louis C Talarico, II, plaintiff.

Sidney St. F. Thaxter, James L. Costello, Curtis, Thaxter, Stevens, Broder, & Micoleau, Portland, ME, Shawnell Williams, Kegler, Brown, Hill & Ritter, Stephen E. Chappelear, Hahn, Loeser & Parks, LLP, Columbus, OH, for Marathon Shoe Company, defendant.

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, District Judge.

The United States Magistrate Judge having filed with the court on July 15, 2002, with copies to counsel, his Recommended Decision on Second Cross-Motions for Summary Judgment (Docket No. 115);

and Plaintiff having filed his objection thereto on August 1, 2002, (Docket No. 116), to which objection Defendant, having been granted an enlargement of time in which to do so, filed its response (Docket No. 119) and a supplemental letter response (Docket No. 120) on August 23, 2002; and this Court having reviewed and considered the Magistrate Judge's Recommended Decision, Together with the entire record; and this Court having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, it is **ORDERED** as follows:

(1) Plaintiff's objection is hereby **DENIED**;

(2) The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED**;

(3) The new cross-motion of Dr. Talarico for summary judgment is hereby **DENIED** and that of Defendant Marathon is hereby **GRANTED**;

(4) The parties having addressed in written submissions the question of whether any infringement claim premised on the doctrine of substantial equivalents remains to be tried in this case, and the Court having fully reviewed and considered those submissions, the Court **FINDS** that any claim of infringement based on the doctrine of substantial equivalents was not timely and specifically pleaded by Plaintiff, and Plaintiff's claim to proceed thereon is hereby **DENIED**.

*RECOMMENDED DECISION ON SECOND CROSS–MOTIONS FOR SUMMARY JUDGMENT*

DAVID M. COHEN, United States Magistrate Judge.

By leave of court, the parties again cross-move for summary judgment follow-ing the court's denial of their initial cross-motions on January 25, 2002. Defendant Marathon Shoe Company's Second Motion for Summary Judgment, etc. ("Defendant's Second Motion") (Docket No. 89); Plaintiff's Motion for Summary Judgment on the Issue of Liability, etc. ("Plaintiff's Second Motion") (Docket No. 93); Memorandum of Decision and Order Denying Defendants' [sic] Motion for Summary Judgment and To Dismiss and Plaintiff's Cross–Motion for Partial Summary Judgment ("Decision") (Docket No. 62) at 21–22; Defendant Marathon Shoe Company's Motion for Leave To File Second Motion for Summary Judgment ("Motion for Leave To File") (Docket No. 73); Letter dated March 22, 2002 from Jon Holder, Esq. to William Brownell, Clerk ("Response to Motion for Leave To File") (Docket No. 83) & endorsement thereon; Letter dated March 26, 2002 from Sidney St. F. Thaxter to William Brownell, Clerk (Docket No. 85); Procedural Order (Docket No. 87). For the reasons that follow, I recommend that the Plaintiff's Second Motion be denied and the Defendant's Second Motion be granted.

### I. Applicable Legal Standards

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant .... By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable [factfinder] could resolve the point in favor of the nonmoving party ....' " *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995) (citations omitted).

The party moving for summary judgment must demonstrate an absence of evi-

dence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997). To the extent that parties cross-move for summary judgment, the court must draw all reasonable inferences against granting summary judgment to determine whether there are genuine issues of material fact to be tried. *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.,* 972 F.2d 426, 429 (1st Cir. 1992). If there are any genuine issues of material fact, both motions must be denied as to the affected issue or issues of law; if not, one party is entitled to judgment as a matter of law. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720, at 336–37 (1998).

## II. Procedural Background

Defendant Marathon Shoe Company ("Marathon") initially moved for summary judgment in its favor as to all claims asserted by plaintiff Louis C. Talarico, II, on the bases that (i) Dr. Talarico, serving as his own expert witness, had submitted a conclusory expert disclosure that failed to satisfy the requirements of Fed.R.Civ.P. 26(a)(2)(B), and (ii) the report of Marathon's expert, Ralph E. Jocke, established that Marathon was not liable for patent infringement. *See generally* Defendant Marathon Shoe Company's Motion for Summary Judgment, etc. ("Defendant's First Motion") (Docket No. 25); *see also generally* Defendant Marathon Shoe Company's Motion To Strike Plaintiff's Liability Expert Report, etc. (Docket No. 26).

Dr. Talarico cross-moved for partial summary judgment on the issue of infringement, arguing that "[i]n order to de-cide both motions in [his] favor, the Court need only resolve two simple issues of claim construction." Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross Motion for Partial Summary Judgment of Infringement, etc. ("Plaintiff's First Motion") (Docket No. 34) at 1–2. Specifically, Dr. Talarico argued that (i) the term "greatest elevation" in the footwear patent in issue (the so-called '882 patent) refers to the elevation under the big toe joint compared with other bones and toe joints located in the forefoot, and (ii) the term "constant thickness" means that the rearfoot portion of the sole is neutral with respect to the forefoot compensation of the invention. *Id.* at 7, 9. He also sought to exclude the testimony of Marathon expert Jocke. *See generally* Plaintiff Louis C. Talarico II's Motion To Exclude Testimony of Ralph Jocke, etc. (Docket No. 30).

Judge Carter declined to strike Dr. Talarico's expert report or exclude Jocke's testimony. Decision at 18–21. He construed both of the disputed patent terms, holding that (i) " 'greatest elevation' is a comparative term referring only to the forefoot portion of the sole as designated by Figure 7 on Sheet 4 of the '882 patent, which cuts diagonally into and does not include, for example, the portion of the sole designated in the '663 patent [Marathon's patent] as the midfoot portion, where there is an 'additional lift to the metatarsal by use of a supportive arch[,]' " and (ii) "constant thickness" has its "ordinary meaning of uniform thickness[,]" although that does not necessarily exclude a cupped-shaped edge. *Id.* at 10, 12 (citation omitted). However, he ruled that neither party adduced sufficient facts to justify summary judgment in his or its favor, noting, *inter alia,* "Because neither party has provided specific factual information regarding whether or not Defendant's product has the greatest elevation, *within the forefoot portion,* under the big toe

joint, summary judgment is precluded." *Id.* at 15 (emphasis in original).

Following issuance of this decision, Marathon sought a second bite at the summary-judgment apple, proposing to submit additional evidence ("measurement and observation") relevant to the "greatest elevation" and "constant thickness" questions. Motion for Leave To File at 2. Dr. Talarico initially objected, Plaintiff Louis C. Talarico II's Limited Opposition to Marathon's Motion for Leave To File Second Motion for Summary Judgment (Docket No. 81), but withdrew his opposition when Marathon agreed not to object to his filing of a cross-motion for summary judgment, Response to Motion for Leave To File. The court approved this resolution. Endorsement to Response to Motion for Leave To File.

### III. Plaintiff's Second Motion

 I turn first to Dr. Talarico's new cross-motion for summary judgment. As Marathon suggests, it is fatally flawed primarily in that it fails to pick up where this court's previous decision left off. *See generally* Defendant Marathon Shoe Company's Opposition to Plaintiff's Second Motion for Summary Judgment on the Issue of Liability ("Defendant's Second Opposition") (Docket No. 102). As Judge Carter made clear in his prior decision, and as Marathon noted in seeking a second chance at summary judgment, the parties' previous attempts failed for lack of an adequate factual record. *See* Decision at 14–17; Motion for Leave To File at 3–4.

Yet Dr. Talarico offers a second statement of material facts virtually identical to his first. *Compare* Plaintiff's Statement of Undisputed Material Facts in Support of His Motion for Summary Judgment on the Issue of Liability ("Plaintiff's Second SMF") (Docket No. 94) *with* Plaintiff's Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross–Motion for Partial Summary Judgment of Infringement ("Plaintiff's First SMF") (Docket No. 35) at 2–4.[1] Inasmuch as appears, the only significant change is the addition of a conclusory final paragraph that sheds no light on any factual issue with respect to which the court sought illumination. *See* Plaintiff's Second SMF ¶ 15. Because Dr. Talarico adds nothing of substance to the mix previously before the court, his second cross-motion for summary judgment should be denied.[2]

### IV. Defendant's Second Motion

I next consider Marathon's new cross-motion for summary judgment, which I recommend be granted for the reasons that follow.

#### A. Factual Context

Marathon's new statement of material facts and Dr. Talarico's two opposing statements, credited to the extent either admitted or supported by record citations in accordance with Local Rule 56, reveal the following relevant facts:[3]

Dr. Talarico is the inventor and owner of United States Patent No. 4,578,882 (the

1. Dr. Talarico does attempt to adduce some fresh evidence, but rather than presenting it in a statement of material facts as required by Local Rule 56, he strews it throughout the body of his brief. *See generally* Plaintiff's Second Motion. Such facts are not cognizable on summary judgment. *See, e.g., Pew v. Scopino,* 161 F.R.D. 1, 1 (D.Me.1995) ("The parties are bound by their [Local Rule 56] Statements of Fact and cannot challenge the

court's summary judgment decision based on facts not properly presented therein.").

2. As Marathon notes, Defendant's Second Opposition at 3–4, Dr. Talarico's second try at summary judgment also misses the mark to the extent that he relitigates claims-construction issues, *see, e.g.,* Plaintiff's Second Motion at 6–9.

3. I omit Marathon's statements concerning (i) the prosecution history of the '882 patent, (ii)

" '882 patent"), which was issued on April 1, 1986. Defendant's Second SMF ¶ 1; Plaintiff's Objection and Response to Defendant's Statement of Undisputed Material Facts ("Plaintiff's Second Opposing SMF, Part 1") (Docket No. 100) ¶ 1. Marathon manufactures and sells a FlatFoot replacement shoe insole, which Dr. Talarico contends infringes the '882 patent. *Id.* ¶ 2. The language of the '882 patent claim specifies that the area with the "greatest elevation" is "beneath the first metatarsalphalangeal joints (the big toe joint)." *Id.* ¶ 3. "Greatest elevation" is a comparative term referring only to the forefront portion of the sole as designated by Figure 7 on Sheet 4 of the '882 patent. *Id.* ¶ 4.

Within the forefoot portion of the sole as designated by Figure 7 on Sheet 4 of the '882 patent, the FlatFoot replacement shoe insole, when placed in a shoe, does not have its area of greatest elevation beneath the first metatarsal-phalangeal joints (the big toe joint). Defendant's Second SMF ¶ 5; Affidavit of Ralph E. Jocke ("Jocke Aff.") (Docket No. 91) ¶¶ 16–25.[4]

■ Marathon sought and obtained an opinion of counsel from competent patent counsel and justifiably relied upon advice from counsel concerning a lack of infringement. Defendant's Second SMF ¶ 16; Affidavit of Michael L. Pryce, M.D. ("Pryce Aff.") (Docket No. 92) ¶¶ 1–8.[5] Marathon

Jocke's opinion as to whether Marathon's product accomplishes the same function, literally or substantially, as that patent, and (iii) the question of whether the rearfoot of the Marathon product is of "constant thickness," *see* Corrected Statement of Undisputed Material Facts ("Defendant's Second SMF") (Docket No. 113) ¶¶ 6–15, solely on the basis that they are immaterial to resolution of the instant motion.

4. Dr. Talarico objects to this statement on the ground that, by his definition of "area," all measurements taken—his own, those of draftsman Philip Metcalf, Jr., and even those of defense expert Jocke—reveal that the Marathon product has its "area" of greatest elevation beneath the big toe joint. Plaintiff's Second Opposing SMF, Part 1 ¶ 5. The objection fails. As an initial matter, Dr. Talarico omits any record citation to his own measurements, which therefore per Local Rule 56 are not cognizable. He does cite to an exhibit to the Metcalf affidavit (Exhibit 1, although he evidently meant to cite to Exhibit 2); however, Exhibit 2 merely indicates that an area from Point A to Point B on the inside edge of the insole has the greatest thickness within the forefoot area. *See* Exhibit 2 to Affidavit of Philip Metcalf, Jr. ("Metcalf Aff.") (Docket No. 95). The Metcalf affidavit identifies Line B–B of the diagram as representing the dividing line of the forefoot area, Metcalf Aff. ¶ 10; however, neither the Metcalf affidavit nor Exhibit 2 identifies Line A–A or purports to locate the big-toe joint, *see generally id.* & Exh. 2 thereto. The Metcalf diagram

therefore does not effectively controvert Marathon's evidence. Finally, Dr. Talarico's reliance on the Jocke measurements is misplaced. He asserts that (i) "[t]he differences found by Jocke are so miniscule as to be not merely irrelevant but as to plainly display an area of constant thickness of considerable size beneath the first metatarsal-phalangeal or big toe joint" and (ii) "[s]ince the [sic] Marathon's insoles are a constant in terms of thickness, the differences determined by Jocke to exist must relate to something extraneous or external to the insole such as the manner in which the insoles were fitted, the variations in the surface of the shoe in which the insoles were placed, or variations in Jocke's use of the pressure sensitive dial indicator measuring device." Plaintiff's Second Opposing SMF, Part 1 ¶ 5. However, these propositions are neither self-evident (particularly in the face of Judge Carter's finding that precise measurements were necessary) nor supported by any record citation as required by Local Rule 56. Hence, they are not cognizable on summary judgment.

5. Dr. Talarico attempts, but fails, effectively to dispute a portion of this statement by again omitting to provide supporting record citations as required by Local Rule 56. *See* Plaintiff's Response to Defendant's "Corrected Statement of Undisputed Material Facts" ("Plaintiff's Second Opposing SMF, Part 2") (Docket No. 114) ¶ 16.

has always believed that it is not infringing and has not infringed on the '882 patent. Defendant's Second SMF ¶ 17; Pryce Aff. ¶ 9.[6] Marathon has not willfully infringed the '882 patent. Defendant's Second SMF ¶ 18; Pryce Aff. ¶ 10.[7]

## B. Analysis

"A patentee may prove infringement literally or under the doctrine of equivalents." Decision at 4. "Infringement is literal or direct when every limitation recited in the patent claim is present exactly in the accused product." *Id.* (citation and internal quotation marks omitted). "Infringement under the doctrine of equivalents exists where the accused product performs substantially the same function in substantially the same way to obtain the same result." *Id.* (citation and internal quotation marks omitted).

In this second summary-judgment round, Marathon seeks judgment in its favor as to (i) any claims premised on so-called "literal infringement" and (ii) any claim of willful infringement. Defendant's Second Motion at 3–8. It is entitled to summary judgment as to both categories of claims.[8]

As to literal infringement, Marathon demonstrates by precise measurements (which Dr. Talarico attempts, but fails, to controvert) that the Marathon insole, when inserted into a shoe, does not have its greatest area of elevation within the forefoot portion under the big toe joint. Marathon thereby proves the absence in its product of at least one limitation recited in the '882 patent. As a result, it cannot be held liable for literal infringement.

Dr. Talarico struggles in vain to stave off this outcome on a number of grounds, each of which I address in turn:

1. That, despite Marathon's and the court's previous references to measurement of the Marathon "insole," Marathon ultimately (and erroneously) submitted measurements of its insole as installed in articles of footwear. Plaintiff's Second Opposition at 1–3. Marathon's mode of measurement was entirely appropriate. The '882 patent concerns an article of footwear, not simply an insole. *See* Decision at 8 (quoting '882 patent). During the parties' first round on summary judgment, Dr. Talarico himself acknowledged that the correct comparison is between the footwear described in the '882 patent and the

---

**6.** Dr. Talarico's five-sentence attempt to dispute this proposition falls short. *See* Plaintiff's Second Opposing SMF, Part 2 ¶ 17. Four sentences either lack a record citation or cite to materials that do not support the propositions stated. The remaining sentence, which notes that Dr. Pryce described the '882 patent in some detail in applying for his own patent, does not effectively controvert Marathon's statement. One cannot reasonably infer, from the fact that Dr. Pryce openly discussed the '882 patent, that he could not have harbored a belief in his non-infringement of that patent.

**7.** Dr. Talarico attempts, but fails, effectively to dispute this statement by virtue of his omission of any record citation. *See* Plaintiff's Second Opposing SMF, Part 2 ¶ 18.

**8.** Marathon moves for summary judgment as to all claims against it, arguing that the court earlier ruled that there is no issue in this case of infringement based on the doctrine of substantial equivalents. Defendant's Second Motion at 1, 3; *see also* Decision at 5. Dr. Talarico disagrees. *See* Plaintiff Louis C. Talarico II's Opposition to Defendant Marathon Shoe Company's Second Motion for Summary Judgment, etc. (Corrected and Final Version) ("Plaintiff's Second Opposition") (Docket No. 101) at 16 n. 8. On this second round of summary judgment, neither party delves into the merits of any substantial-equivalents-based claim. The issue, instead, is purely whether such a claim survived the first round of summary judgment. I consider that question to be beyond the scope of this recommended decision; accordingly, I advise the parties to raise it directly with Judge Carter.

Marathon insoles as inserted into articles of footwear. *See* Plaintiff's First Motion at 10 (arguing that "each and every limitation of the '882 patent is satisfied when Marathon's customers use the Flat Foot Insoles in a shoe as directed by Marathon.... This established direct infringement by customers satisfies the necessary prerequisite for holding Marathon liable as an indirect infringer.").

2. That, with respect to the forefoot section, the goal of the '882 patent and the Marathon insole is identical—to provide "a simultaneous touchdown for the entire area of the forefoot by adding material under the area of the large toe joint in order to cancel the foot's normal tendency to roll from its outer to inner side before it can gain adequate purchase to begin another stride." Plaintiff's Second Opposition at 4. This argument is flawed for at least two reasons: (i) it relies on facts not in evidence (*i.e.*, not found in Dr. Talarico's opposing statement of material facts and properly supported by record citations as required by Local Rule 56), *see generally* Plaintiff's Second Opposing SMF, Part 1; Plaintiff's Second Opposing SMF, Part 2, and (ii) it is in any event irrelevant to the issue of literal infringement, the only type of infringement implicated by Marathon's motion for summary judgment.

3. That the Marathon product has the same angulation as the footwear described in the '882 patent. Plaintiff's Second Opposition at 4–5. This asseveration again relies on facts not properly placed in evidence in accordance with Local Rule 56. *See generally* Plaintiff's Second Opposing SMF, Part 1; Plaintiff's Second Opposing

SMF, Part 2. In any event, even were these facts cognizable, they would not be outcome-determinative inasmuch as Marathon need only show deviation from one limitation to escape liability for literal infringement.

4. That Marathon errs in assuming "that the area of greatest elevation is smaller than it could possibly be." Plaintiff's Second Opposition at 9. In Dr. Talarico's view, this is so inasmuch as (i) the "area" of greatest elevation must account for obvious differences in shoes and shoe sizes and substantial differences in the anatomy of the human foot, and (ii) among podiatrists the ball of the foot is understood to include the heads of the bones that are joined. *Id.* Once again, neither of these asserted facts is properly set forth in a statement of material facts as required by Local Rule 56. *See generally* Plaintiff's Second Opposing SMF, Part 1; Plaintiff's Second Opposing SMF, Part 2. Facts that appear only in the body of a brief are not cognizable on summary judgment.[9]

5. That the "biggest problem" with Marathon's "greatest elevation" argument is "flagrant distortion." Plaintiff's Second Opposition at 9. In Dr. Talarico's view, this is evidenced by Exhibit 10 to the Jocke affidavit, in which the shadowing in the photograph and the "peculiar overhang of the tips of the toes themselves" suggest serious distortion. *Id.* In like vein, Dr. Talarico argues that the first metatarsal-phalangeal joint is not where Jocke tries to place it, but somewhere to the rear of that point. *Id.* Again, none of these asserted facts is properly set forth in a statement of

---

**9.** Here and elsewhere, Dr. Talarico attempts to challenge the methodology used by Jocke to arrive at the measurements in question. In cases in which (as here) an expert has explained his methodology, *see* Jocke Aff. ¶¶ 11–25, challenges to that methodology must be grounded in evidence. *See, e.g., Ambrosini v. Labarraque,* 101 F.3d 129, 134 (D.C.Cir.1996)

("[O]nce an expert has explained his or her methodology, and has withstood cross-examination or evidence suggesting that the methodology is not derived from the scientific method, the expert's testimony, so long as it 'fits' an issue in the case, is admissible under Rule 702 for the trier of fact to weigh.").

material facts, supported by a record citation, as required by Local Rule 56. *See generally* Plaintiff's Second Opposing SMF, Part 1; Plaintiff's Second Opposing SMF, Part 2.

6. That a dial-measuring device (such as that used by Jocke) "is probably not going to yield terribly accurate results when soft rubber products are the object of measurement." Plaintiff's Second Opposition at 9–10. Again, this assertion is not properly set forth in a statement of material facts, supported by a record citation as required by Local Rule 56. *See generally* Plaintiff's Second Opposing SMF, Part 1; Plaintiff's Second Opposing SMF, Part 2.

7. That Jocke's forefoot measurements actually prove infringement, with his measurement points 1 to 3 all corresponding to the *"area* beneath the first metatarsal-phalangeal joints (the big toe joint)" to which the "greatest elevation" limitation of the '882 patent applies, and points 1 to 3 in turn, each being of greater elevation than Jocke's points 4–7, which correspond to the remaining toe joints. Plaintiff's Second Opposition at 11 (emphasis in original). According to Dr. Talarico, "Attorney Jocke's mistake, which is understandable given his background as a patent lawyer/mechanical engineer and his complete lack of any education and experience in foot anatomy or shoe design, is that he assumes the patent requires greatest elevation at only a single *discrete point* instead of a more general 'area.'" *Id.* at 12 (emphasis in original). Rather than having made a "mistake" due to ignorance, Jocke followed the court's lead, with the court previously having framed the issue as "whether or not Defendant's product has the greatest elevation, within the forefoot portion, under the big toe joint[.]" Decision at 15 (emphasis omitted). In so doing, the court construed patent language that reads, in relevant part: "giving the

area beneath the first metatarsal-phalangeal joints (the big toe joint) the·greatest elevation." *Id.* at 8 (quoting '882 patent). An area described as being "beneath," or "under," a certain toe joint does not encompass areas adjacent to (*i.e.*, behind, or to the side of) that joint.

8. That the '882 patent does not refer to a single discrete point because (i) the bones in everyone's feet are sized and proportioned slightly differently, so that the discrete point under one person's big toe joint differs from that of another person even if those people wear the same-sized shoes, (ii) some of that variation is due to the fact that shoe sizes change only in half-size increments, and (iii) the location of the discrete point changes slightly during standing, walking and running. Plaintiff's Second Opposition at 12–13. Further, in Dr. Talarico's view, the difference in Jocke's measurements from points 1 to 3 is too miniscule to matter; were the "appropriate" unit of measure used (sixteenths of an inch), that difference would not even be detectable. *Id.* at 13 n. 6; *see also id.* at 13 n. 7. Again, none of these assertions is submitted in accordance with Local Rule 56. *See generally* Plaintiff's Second Opposing SMF, Part 1; Plaintiff's Second Opposing SMF, Part 2.

In summary, Marathon demonstrates by precise measurements that, when its insole is inserted into footwear, the area beneath the big toe joint is not the area of·greatest elevation within the forefoot section. Dr. Talarico tries, but fails, to controvert this point or otherwise successfully challenge Marathon's evidence. Marathon accordingly is entitled to summary judgment as to any claims against it predicated on so-called "literal" infringement.

■ I turn finally to the issue of willful infringement. As the Court of Appeals for the Federal Circuit has clarified:

The tort of willful infringement arises upon deliberate disregard for the property rights of the patentee. Thus the focus is generally on whether the infringer exercised due care to avoid infringement, usually by seeking the advice of competent and objective counsel, and receiving exculpatory advice. When it is found that the infringer acted without a reasonable belief that its actions would avoid infringement, the patentee has established willful infringement, which may be accompanied by enhanced damages.

*Vulcan Eng'g Co. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1378 (Fed.Cir.2002).

Marathon adduces evidence (which Dr. Talarico attempts, but fails, to controvert) that it sought advice of competent counsel and relied on that advice in concluding that it was not infringing the '882 patent. Marathon accordingly is entitled to summary judgment as to any claim of willful infringement.

## V. Conclusion

For the foregoing reasons, I recommend that the new cross-motion of Dr. Talarico for summary judgment be **DENIED**, and that of Marathon be **GRANTED**, with the caveat that the parties address with Judge Carter the question whether any infringement claim premised on the doctrine of substantial equivalents remains to be tried.

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*