Debra D. HARTLINE, Plaintiff,

v.

NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Defendant.

No. 03–466T.

United States District Court, D. Rhode Island.

Jan. 11, 2005.

Adam C. Robitaille, Maurene G. Souza, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, RI, for Plaintiff and Counter–Defendant.

John B. Reilly, Esq., John Reilly & Associates, Warwick, RI, for Defendant and Counter–Claimant.

Dean G. Robinson, Esq., East Providence, RI, for Defendant.

## MEMORANDUM AND ORDER

TORRES, Chief Judge.

### INTRODUCTION

Debra D. Hartline ("Hartline") brought this suit against National Grange Mutual Insurance Company ("National Grange") seeking indemnification under her homeowner's insurance policy for fire damage to her home. Hartline asserts claims for breach of contract and "bad faith." National Grange has filed a counterclaim, seeking a declaration that it is not liable for Hartline's loss because the policy was cancelled prior to the fire.

The case currently is before the Court for consideration of Hartline's Motion for Partial Summary Judgment on the breach of contract claim. The issues presented are whether National Grange's notice of cancellation complied with statutory requirements and, if so, whether Hartline "paid" the overdue premium by tendering a check that, later, was dishonored. Because the Court finds that the cancellation notice was valid and that the check did not constitute "payment" of the overdue premium, Hartline's motion for summary judgment is denied.

### FACTS

In January of 2002, National Grange issued an insurance policy on Hartline's home for the period from January 21, 2002 through January 21, 2003. When Hartline failed to make timely payment of the monthly premium due in December, 2002, National Grange sent her a "Notice of Cancellation." The notice stated, in part, that:

... OUR RECORDS INDICATE THAT WE HAVE NOT RECEIVED YOUR PAYMENT DUE 12/05/02. IF WE DO NOT RECEIVE PAYMENT, YOUR POLICY WILL BE CANCELLED ACCORDING TO POLICY PROVISIONS ON THE CANCELLATION/NON–RENEWAL EFFECTIVE DATE AND TIME SHOWN ON THIS NOTICE.

TO PREVENT THIS FROM HAPPENING, PLEASE FORWARD THE MINIMUM DUE SHOWN ABOVE WITHOUT DELAY ... AS LONG AS YOUR MINIMUM PAYMENT IS RECEIVED BEFORE THE CANCELLATION/NON–RENEWAL EFFECTIVE DATE AND TIME SHOWN ON THIS NOTICE, YOUR COVERAGE WILL CONTINUE WITHOUT INTERRUPTION.

The notice stated that the "CANCELLATION/NON–RENEWAL EFFECTIVE MO DAY YR" was December 29, 2002 at 12:01 AM and that the minimum payment due was $80.50. The notice went on to state:

A REINSTATEMENT NOTICE WILL BE SENT TO YOU WHEN WE RECEIVE YOUR PAYMENT. REINSTATEMENTS ARE CONDITIONAL UPON BANK ACCEPTANCE OF PAYMENTS BY CHECK.

It appears that, on December 27, 2002, Hartline delivered to her insurance agent a check in the amount of $80.50 drawn on Fleet National Bank.

On January 6, 2003, Hartline's home was extensively damaged by fire. That same

day, Fleet dishonored Hartline's check due to insufficient funds. Hartline's bank statement shows that, at no time between December 27 and January 7, did Hartline have sufficient funds in her account to cover that check.

On January 13, 2002, National Grange sent Hartline a letter telling her that her policy had been "reinstated and remains in force." However, the letter also stated that:

> ... reinstatement is dependent upon timely payment being honored by the financial institution and if payment is not honored by the financial institution, the policy will terminate on the date and time shown on the cancellation notice issued for nonpayment of premium.

On January 14, 2003, National Grange wrote to Hartline informing her that her check had been "returned unpaid" and that "[p]er the conditions of [the] cancellation notice," her coverage was cancelled as of December 29, 2002.

Hartline argues that the Notice of Cancellation was ineffective because it failed to unambiguously and unequivocally show a "present cancellation" of her policy as required by Rhode Island law.

National Grange argues that the notice was sufficient because it made it "apparent to the ordinary person" that the policy would be cancelled unless payment was received by December 29, 2002 and Hartline's December 27, 2002 check did not constitute payment because it was returned for insufficient funds.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, a court must review the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir.1997).

### ANALYSIS

### I. SUFFICIENCY OF THE CANCELLATION NOTICE

Under Rhode Island law, an insurer cannot cancel a policy for nonpayment of the premium unless it, first, provides sufficient notice of intent to cancel. *See Metro. Group Prop. and Cas. Ins. Co. v. Lopes*, 826 A.2d 87, 89 (R.I.2003). The purpose behind this requirement is "to afford the insured the time to obtain other insurance prior to termination of the existing policy." *Auto. Club Ins. Co. v. Donovan*, 550 A.2d 622, 623 (R.I.1988). In order for a notice of cancellation to be legally sufficient, " 'it must be clear, definite and unequivocal, and declare that as of a certain date the insurer is no longer bound under the policy.' " *Lopes*, 826 A.2d at 89 (quoting *Auto. Club*, 550 A.2d at 623). The intent to cancel must be "apparent to the ordinary person." *Id.* (internal quotation omitted). In determining whether these requirements have been met, " 'all ambiguities in the cancellation notice will be resolved in favor of the insured.' " *Id.* (quoting *Auto. Club*, 550 A.2d at 624 (R.I.)).

In this case, the Notice of Cancellation was clear and unequivocal. It was clearly denominated as a Notice of Cancellation. Moreover, it was similar in several respects to the notice held valid in *Lopes*. It stated the date and time of cancellation and explained that cancellation would take place at that time if payment was not

**474**

received by then. *See Lopes,* 826 A.2d at 88, 90.

It is true that the notice also indicated that the policy could be "reinstated" upon payment of the premium and that one could construe that to mean that there might be no lapse in coverage even if payment was made after December 29. However, the notice made clear that "reinstatements are conditional upon bank acceptance of payments by check." Therefore, since Hartline's December 27, check was dishonored, it could not have reinstated her policy.

## II. PAYMENT OF THE PREMIUM

 The fact that Hartline's check was dishonored also means that it did not constitute "payment" in accordance with the terms of the Notice of Cancellation. It is a well settled rule of insurance law that a check is accepted as payment for a premium "on the condition that it be honored and paid in cash, unless there is a special agreement on the part of the insurer that the check itself will be taken as payment." Lee R. Russ & Thomas F. Segalla, *Couch on Insurance,* § 73:7 (3d. ed.1997). Absent any contrary agreement, the delivery of a worthless check does not prevent coverage from lapsing for non-payment of the premium. *Tallent v. Tennessee Farmers Mutual Ins. Co.,* 785 S.W.2d 339, 343 (Tenn.1990) (citing 14A Appelman, *Insurance Law and Practice,* § 8144 (1985)).

In this case, there is no evidence of any special agreement that Hartline's check was accepted as payment regardless of whether it would be honored. Thus the check must be viewed as only conditionally accepted and it did not constitute "payment" of the premium because, later, it was dishonored. Accordingly Hartline's policy was cancelled on December 29, 2002, the date indicated on the Notice of Cancel-

lation which was more than a week before the fire.

Nor is there any evidence that National Grange was estopped from cancelling Hartline's coverage. This is not a case where the insured had sufficient funds in her account when the check was tendered and the check was dishonored after the insurer unreasonably delayed in presenting it for payment or one in which the insurer failed to exercise reasonable efforts to have the check honored. *See* Russ et al., *supra* § 73:14 (citing cases holding that invalid check did not cancel coverage due to unreasonable delay by insurer in collecting the check). National Grange presented Hartline's check for payment within a week and, as already noted, Hartline's bank statement shows that Hartline did not have $80.50 in her account at any time between December 27, 2002 and January 7.

Finally, there is no basis for concluding that, but for the letter sent on January 13, Hartline would have obtained alternative coverage before the fire. The fire occurred on January 5, one week *before* the letter. Therefore, the letter couldn't have misled Hartline into believing that her policy had been reinstated before the fire.

### CONCLUSION

For all the foregoing reasons, Hartline's Motion for Partial Summary Judgment is denied.

IT IS SO ORDERED.