# United States Court of Appeals
## For the First Circuit

No. 04-1967

CENTRO MEDICO DEL TURABO, INC., ET AL.,

Plaintiffs, Appellants,

v.

CARMEN FELICIANO DE MELECIO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Fernando E. Agrait, with whom Orlando H. Martínez-Echeverría
was on brief, for appellants.
Doraliz E. Ortiz-de-León, Assistant Solicitor General, with
whom Roberto J. Sánchez Ramos, Solicitor General, Kenneth Pamias
Velázquez, Deputy Solicitor General, and Camelia Fernández-Romeu,
Office of the Solicitor General, were on brief, for appellee.

April 19, 2005

**SELYA**, **Circuit Judge**.  In this appeal, the plaintiffs challenge the district court's dismissal of their complaint, brought under 42 U.S.C. § 1983, for failure to state a claim upon which relief might be granted.  After careful consideration of the briefs and the record, we conclude that the most recent incident described in the complaint was not actionable; that the earlier incidents fell outside the limitations period; and, therefore, that the district court properly dismissed the complaint.

## I.

## Background

Beginning in 1993, the Commonwealth of Puerto Rico embarked on a process of privatizing its extensive network of public health facilities.  That effort provides the backdrop for this litigation.

On November 22, 1999, plaintiffs-appellants Centro Medico del Turabo, Inc., Turabo Medical Center Partnership, Hospital Interamericano de Medicina Avanzada de Humacao, and Joaquín Rodríguez García (Rodríguez) filed a civil action against Carmen Feliciano de Melecio (the Commonwealth's Secretary of Health).  The complaint charged that, between 1993 and 1999, the Secretary had refused to grant certificates of necessity and convenience required to develop certain medical facilities at two of the plaintiffs'

hospitals,[1] denied them permission to transfer a license from one hospital to another, and awarded contracts for the purchase, lease, and/or administration of various public health facilities to entities not affiliated with the plaintiffs. The complaint further alleged that these acts and omissions were discriminatory, transgressed due process, denied the plaintiffs the equal protection of the laws, and were taken in retaliation for the plaintiffs' exercise of their First Amendment rights (i.e., their persistent challenges to various of the Secretary's actions in the local courts). The suit sought both damages and injunctive relief to redress these alleged constitutional harms.

The Secretary filed a motion to dismiss, arguing, inter alia, that the statute of limitations had run. The plaintiffs rejoined that the described incidents comprised an interrelated series of constitutional violations, one of which occurred within the limitations period, and, thus, that the "continuing violation" doctrine salvaged all of their claims. The district court disagreed and granted the motion to dismiss. See Centro Medico del Turabo v. Feliciano de Melecio, 321 F. Supp. 2d 285 (D.P.R. 2004).

In pertinent part, the district court concluded that the complaint, on its face, demonstrated that the plaintiffs were aware as early as 1996 of the need to assert their rights in response to

_____

[1]The plaintiffs are related parties, controlled in the final analysis by Rodríguez. The precise relationships among them are not relevant to the issues on appeal.

the Secretary's actions, but nevertheless failed seasonably to invoke section 1983. See id. at 292. The court then focused on the one timeous incident described in the complaint — the Secretary's contractual assignment of the Caguas Regional Hospital (CRH) to the control of a medical school, Escuela de Ciencias Medícas San Juan Bautista (San Juan Bautista), in July of 1999 — and concluded that the circumstances there were neither sufficiently similar to those underlying the time-barred claims to justify treating it as a continuation of the earlier episodes nor independently sufficient to ground a cognizable constitutional claim. See id. at 292-94. This appeal ensued.

## II.

### Discussion

In this venue, the plaintiffs argue that the 1999 grant to San Juan Bautista of the right to administer CRH was one in a series of discriminatory actions taken against them by the Secretary; that the 1999 incident falls within the limitations period; and that the events underlying the time-barred claims are so substantially related to that incident that the entire series of claims should be deemed timely filed under the continuing violation doctrine. We limn the standard of review, chart the contours of the pertinent legal landscape, and then turn to the plaintiffs' argument.

## A.

## Standard of Review

The court below dismissed the plaintiffs' action for failure to state a claim under Fed. R. Civ. P. 12(b)(6). We review that determination de novo, adhering to the same criteria that bound the lower court. In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). The tools of this trade include the complaint, documents annexed to it or fairly incorporated into it, and matters susceptible to judicial notice. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

In a civil rights case, there is no heightened pleading standard. Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66-67 (1st Cir. 2004). Therefore, a district court charged with the adjudication of a motion to dismiss under Rule 12(b)(6) must apply the notice pleading requirements of Fed. R. Civ. P. 8(a)(2). Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005); Educadores, 367 F.3d at 66. A complaint satisfies that standard if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47 (1957).

In measuring a complaint against this benchmark, a reviewing court must "assume the truth of all well-pleaded facts

-5-

and indulge all reasonable inferences that fit the plaintiff's stated theory of liability." Colonial Mortg. Bankers, 324 F.3d at 15. Still, such a court is not bound to credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

Once the court has performed this tamisage, dismissal for failure to state a claim will be appropriate if the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) (internal quotation marks omitted)). We will affirm a dismissal only if it is transparently clear that the complaint, in light of the facts alleged, engenders no viable theory of liability. Educadores, 367 F.3d at 66; Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001).

Under this rubric, it is sometimes permissible to grant a motion to dismiss based on an affirmative defense, such as the statute of limitations. That happens "when the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998). This is the test that we apply here.

## B.

## The Limitations Period

Section 1983 creates a private right of action for redressing abridgments or deprivations of federally assured rights.[2] Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004); McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Because it does not contain a built-in limitations period, a federal court adjudicating a section 1983 action must borrow the forum state's general statute of limitations for personal injury actions. Owens v. Okure, 488 U.S. 235, 240-41, 249-50 (1989); Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). In Puerto Rico, the limitations period for injuries to the person is one year. See 31 P.R. Laws Ann. § 5298(2). Accordingly, that term applies here. See Rodríguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992).

_____

[2]That statute provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Puerto Rico's one-year limitations period begins to run one day after the date of accrual. See Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 175 (1st Cir. 1997) (per curiam). The accrual date, however, is determined in accordance with federal law. Rivera-Muriente, 959 F.2d at 353. In a section 1983 case, a claim ordinarily accrues "when the plaintiff knows, or has reason to know, of the injury on which the action is based." Id.; see also Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 119-20 (1st Cir. 2003) (noting that a claim accrues "when facts supportive of a civil rights action are or should be apparent to a reasonably prudent person similarly situated" (citation and internal quotation marks omitted)).

Here, the plaintiffs do not dispute that they knew, or had reason to know, of their injuries immediately following the occurrence of each of the various incidents. It is likewise undisputed that the only stand-alone claim of injury that falls chronologically within the limitations period is the claim relating to the Secretary's July 1999 transfer of administrative responsibility over CRH to San Juan Bautista. The plaintiffs nevertheless seek to salvage their earlier claims by bringing them under the umbrella of the continuing violation doctrine. To that

end, they allege that the CRH contretemps was part of a long-running serial violation.[3]

Under the serial violation branch of the continuing violation doctrine, a plaintiff may link a number of discriminatory acts emanating from the same discriminatory animus, even though each act constitutes a separate wrong. See Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998); Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990). If the plaintiff can forge that link and can also show that at least one act in the series occurred within the limitations period, the suit may be considered timely as to all the acts. See Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 221-22 (1st Cir. 1996); Kassaye v. Bryant Coll., 999 F.2d 603, 606 (1st Cir. 1993).

In order for the serial violation theory to apply, the act that falls within the limitations period must itself constitute an actionable violation. Lawton, 101 F.3d 222 ("Common sense teaches that a plaintiff cannot resuscitate time-barred acts, said to be discriminatory, by the simple expedient of linking them to a non-identical, non-discriminatory, non-time barred act."); Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610-11 (1st Cir. 1994) (refusing to

_____

[3]The continuing violation doctrine encompasses both serial violations and systemic violations. Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990). The plaintiffs have not alleged a systemic violation. See Centro Medico del Turabo, 321 F. Supp. 2d at 292; see also Appellants' Br. at 10 (accepting the district court's determination that no systemic violation was alleged).

apply the serial violation theory when the plaintiff had failed to show that the timely acts were "separate and actionable § 1983 violations"); Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 183 (1st Cir. 1989) (stating that the plaintiff "retain[s] the burden of demonstrating that some discriminatory act transpired within the appropriate time frame").  It follows inexorably that if the plaintiffs have failed to state an independently actionable claim based on the CRH incident, they cannot rely on that incident to anchor the rest of their claims (each of which arose out of events that occurred well prior to November 21, 1998 — the earliest day within the limitations period).  Consequently, we examine that claim before proceeding further.

## C.

### The July 1999 Incident

In their complaint and their brief, the plaintiffs have proposed, without meaningful elaboration, that the assignment to San Juan Bautista of the right to administer CRH's affairs contravened their due process, equal protection, and First Amendment rights.  We address each of these suggested bases for liability.

**1. Procedural Due Process**.  The plaintiffs have made a general suggestion that the Secretary's failure to award them the right to purchase, lease, or manage CRH violated due process.  To the extent that they hope to maintain a procedural due process

claim, they must first point to a protected liberty or property interest. Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). There is no liberty interest implicated here,[4] so the plaintiffs' claim stands or falls, in the first instance, on the existence of a constitutionally protected property interest.

In order to establish a constitutionally protected property interest, the plaintiffs must identify a "legitimate claim of entitlement" to the property in question — a claim of entitlement created and defined by "existing rules or understandings that stem from an independent source such as state law." Id. at 577. For this purpose, "an abstract need or desire" or a "unilateral expectation" are not sufficient to cement a constitutionally protected interest. Id.

The plaintiffs allege that, on two occasions, they wrote to the Secretary to express an interest in purchasing, leasing, or managing CRH. That is not enough: they have wholly failed to identify any legally cognizable property interest in acquiring a

---

[4]To invoke a liberty interest, the plaintiffs would have to identify "a right or status previously recognized by state law [that] was distinctly altered or extinguished" by state action. Paul v. Davis, 424 U.S. 693, 711 (1976); see also Johnson v. Rodriguez, 943 F.2d 104, 109 (1st Cir. 1991). They have made no effort to convince us that any such right or status is implicated here, and we can think of none.

-11-

right to purchase, lease, manage, or otherwise participate in the privatization of CRH. Puerto Rico law governing the Department of Health's authority to grant contracts for the privatization of publicly-owned health care facilities dispels any doubt. The statutory scheme not only explicitly allows the Secretary to award such contracts to medical schools without following the usual bidding protocol but also directs that she prefer such institutions. See 24 P.R. Laws Ann. §§ 3322, 3306. These statutes make it pellucid that the plaintiffs had no legally cognizable right to vie for the CRH contract on an equal footing with San Juan Bautista, let alone an entitlement to have that contract awarded to them rather than to a medical school. The short of it is that the plaintiffs had nothing more than a unilateral desire to secure a stake in CRH's privatization. The frustration of such a subjective desire is a far cry from the deprivation of a constitutionally protected property interest. For this reason, the plaintiffs' procedural due process claim fails.

　　　　2. **Substantive Due Process**. Next, the plaintiffs contend that the Secretary's awarding of a contract to San Juan Bautista was "[a]rbitrary, capricious, unfounded, and discriminatory," thus violating their right to substantive due process. This contention rings hollow.

　　　　The Fourteenth Amendment protects against deprivation of life, liberty, or property without due process of law. See U.S.

-12-

Const. amend XIV. The substantive component of this guarantee guards against "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). In the substantive due process context (as in the procedural due process context), a plaintiff, as a condition precedent to stating a valid claim, must exhibit a constitutionally protected interest in life, liberty, or property. See Washington v. Glucksberg, 521 U.S. 702, 722 (1997); Rivera, 402 F.3d at 33-34; Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002). As explained above, see supra Part II(C)(1), the plaintiffs have failed to identify such an interest. Consequently, their substantive due process claim founders.

   **3. Equal Protection**. The plaintiffs asseverate that the Secretary's grant of the CRH contract to San Juan Bautista denied them a fair shake in the potentially lucrative process of privatization of public health facilities, in violation of the Equal Protection Clause. This asseveration is frivolous. The plaintiffs failed, even when pressed at oral argument, to position their claim within the familiar equal protection framework: they have not claimed membership in a protected class or demonstrated that other entities, similarly situated, were treated differently concerning the award of hospital contracts. Their inability to identify these doctrinal rudiments is fatal to their equal protection challenge. See Barrington Cove Ltd. P'ship v. R.I.

-13-

Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7-10 (1st Cir. 2001);

Hennessy v. City of Melrose, 194 F.3d 237, 244 (1st Cir. 1999);

Gilbert v. City of Cambridge, 932 F.2d 51, 66 (1st Cir. 1991).

4. **First Amendment**. The plaintiffs' last-gasp claim is that the award of the CRH contract to an unrelated entity was part of a "punitive campaign" to retaliate against them for availing themselves of commonwealth court remedies following the Secretary's denial of their applications for certain hospital permits. The Supreme Court has made it plain that "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." Perry v. Sindermann, 408 U.S. 593, 597 (1972). The exercise of First Amendment rights is among the constitutionally proscribed reasons for the denial of a government benefit. Id. Thus, we have recognized, as a general matter, that "[c]laims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004).

It is an open question, however, whether First Amendment retaliation claims presented by disappointed bidders or applicants for new government contracts are cognizable. In Board of County Commissioners v. Umbehr, 518 U.S. 668, 673 (1996), the Court held that First Amendment protections extend to independent contractors alleging termination or prevention of automatic renewal of at-will

-14-

government contracts in retaliation for the exercise of the freedom of speech. On that basis, the Court held that a person so situated could state a valid cause of action under section 1983. See id. at 686. In so holding, the Justices "emphasize[d] the limited nature of [their] decision," which concerned only "the termination of a pre-existing commercial relationship with the government," and, accordingly, declined to address "the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship." Id. at 685.

Following Umbehr and a closely related decision recognizing similar protections for independent contractors alleging politically motivated discrimination, see O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 714-15 (1996), we have acknowledged this uncertainty, observing that "[t]he next area of contest appears to revolve around those who wish for the first time to bid for government contracts." Prisma Zona Exploratoria v. Calderon, 310 F.3d 1, 7 (1st Cir. 2002). In Prisma Zona, however, we found it unnecessary to resolve that question, see id. — and we have the same luxury today.

Even assuming, for argument's sake, that an entity that has no preexisting contractual relationship with the Commonwealth can state a claim under section 1983 for an allegedly retaliatory denial of a bid, we nevertheless find that the plaintiffs have failed to state a valid retaliation claim because they have not

-15-

identified any action taken against them by the Secretary in connection with the privatization of CRH, whether in the form of an actual denial of a bid or an improper refusal to consider an application. To the contrary, the Secretary, in accordance with her authority under 24 P.R. Laws Ann. §§ 3306, 3322, never issued an invitation for bids. Consequently, the plaintiffs' status does not rise to that of disappointed bidders, and the grant of the CRH contract to San Juan Bautista cannot be characterized as an action taken against them so as to satisfy the threshold requirement of alleging a retaliatory decision. We explain briefly.

If the protections recognized in Umbehr were to extend to unsolicited bids for new government contracts — a matter on which we take no view — establishing a First Amendment retaliation claim would necessitate a showing "that [the plaintiff's] conduct was constitutionally protected, and that this conduct was a 'substantial factor' [or] . . . a 'motivating factor'" driving the allegedly retaliatory decision. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Even so, the defendant could then avoid a finding of liability by way of the so-called Mt. Healthy defense, which requires a showing that "it would have reached the same decision . . . even in the absence of the protected conduct." Id.; see also Umbehr, 518 U.S. at 685.

In this case, the plaintiffs have alleged that, on three occasions occurring in 1996 and 1997, they successfully appealed

-16-

denials of applications for hospital licenses. As a general matter, this type of conduct — seeking to avail oneself of judicial remedies — is constitutionally protected. See Powell, 391 F.3d at 17. Thus, we assume that the plaintiffs have stated the first material element of a retaliation claim.

That is about as far as the allegations of the complaint take the plaintiffs. Although they have shown constitutionally protected conduct, they have failed to identify any retaliatory decision made by the Secretary, within the limitations period, in response to that conduct.

The complaint provides no support for the contention that the Secretary's grant of a contract to administer CRH to San Juan Bautista was connected in any way to the plaintiffs, let alone to their earlier court activities. The Secretary, pursuant to a statutory preference that the plaintiffs do not challenge, elected to award the contract to an accredited medical school without conducting an open application process. At no point did she deny any application or bid submitted by the plaintiffs. By like token, the grant to San Juan Bautista did not involve any omission on the part of the Secretary: she was not required to extend a request for bids; the plaintiffs had no constitutionally protected interest in participating in such a process; and, therefore, the failure to respond to the plaintiffs' unsolicited notices of interest cannot plausibly be characterized as the neglect of an obligation owed to

the plaintiffs.  In the absence of some action directed against the plaintiffs or some omission that diminishes a constitutionally protected interest or entitlement, the Secretary's conduct cannot be said to have been taken against the plaintiffs.  See LaRou v. Ridlon, 98 F.3d 659, 662-63 (1st Cir. 1996) (finding that the decision to post a job listing without first making offer to plaintiff was not retaliatory because defendant had no obligation to give preference to the plaintiff).

Even if the Secretary's action could, by some thaumaturgical feat, be characterized as one directed against the plaintiffs (rather than one that merely has an incidental effect on an unprotected interest), the plaintiffs would have to show that the adverse action was substantially attributable to the exercise of their rights of appeal and not to some other (unrelated) reason. See Mihos v. Swift, 358 F.3d 91, 108 (1st Cir. 2004).  Other than making a vague mention of the "timing of the acts" and a conclusory reference to the defendant's "hostility," the plaintiffs have not made any allegation that their earlier recourse to the Puerto Rico courts was a substantial or motivating factor in the Secretary's decision to award the CRH contract to San Juan Bautista.[5]

---

[5]In point of fact, the lapse of time between the exercise of the plaintiffs' rights of appeal and the Secretary's allegedly retaliatory action (roughly two years) undercuts rather than supports the plaintiffs' effort to demonstrate a causal connection. Although close temporal proximity between two events may give rise to an inference of causal connection, see, e.g., Lewis v. City of Boston, 321 F.3d 207, 219 (1st Cir. 2003), intervals similar to the

Moreover, the record establishes that, even without the protected activity, the same result would have obtained. After all, the Secretary, on this occasion, took no action against the plaintiffs. She was mandated by law to prefer medical schools in the awarding of hospital contracts — and that is precisely what she did.

To recapitulate, we conclude that the plaintiffs have failed to state a constitutionally cognizable claim related to the July 1999 contract award. Because that incident cannot support an actionable claim under section 1983, it cannot anchor the remainder of the plaintiffs' (time-barred) claims. See Muniz-Cabrero, 23 F.3d at 610-11. Thus, we do not reach the question of whether the other criteria necessary for a serial violation claim are satisfied here.

## III.

### Conclusion

We need go no further. Concluding, as we do, that the complaint fails to state a cause of action upon which section 1983

---

one involved here are simply too long to support such an inference, see, e.g., id. (noting that the passage of eighteen months between the protected conduct and the allegedly retaliatory action undercut the temporal proximity argument); Dressler v. Daniel, 315 F.3d 75, 79-80 (1st Cir. 2003) (finding causal connection tenuous because of passage of two years); Lewis v. Gillette Co., 22 F.3d 22, 25 (1st Cir. 1994) (finding that lapse of two years undermined inference); see also Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (holding that nine-month period between relevant events weakened any inference of causation).

-19-

relief can be granted, we affirm the district court's order of dismissal.

**Affirmed**.