# United States Court of Appeals

## For the First Circuit

No. 04-2576

MIGUEL REDONDO-BORGES ET AL.,
Plaintiffs, Appellants,

v.

UNITED STATES DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT ET AL.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before
Selya, Dyk* and Howard,
Circuit Judges.

Miguel J. Ortega-Muñoz, with whom John F. Nevares, Waleska M. Valdes-Marchand, and John F. Nevares & Associates, PSC were on brief, for appellants.
Robert D. Kamenshine, Attorney, Appellate Staff, Civil Division, United States Department of Justice, with whom Peter D. Keisler, Assistant Attorney General, H. S. Garcia, United States Attorney, and Barbara C. Biddle, Attorney, were on brief, for federal appellees.
Salvador Antonetti-Stutts, Solicitor General of Puerto Rico, with whom Mariana D. Negrón-Vargas, Deputy Solicitor General, and Doraliz E. Ortiz-De-León, Assistant Solicitor General, were on brief, for remaining appellees.

_____

*Of the Federal Circuit, sitting by designation.

August 26, 2005

**SELYA**, **Circuit Judge**. This appeal involves a disappointed bidder who, after apparently winning the procurement race, lost the prize when the contracting agency deemed him (and his company) "nonresponsible." After careful review, we conclude that the plaintiffs' federal claims, to the extent they have been preserved, fail to state cognizable causes of action under 42 U.S.C. § 1983. Consequently, we affirm the district court's dismissal of the action.

## I. BACKGROUND

Since the district court decided this case on a motion to dismiss, we derive the raw facts from the plaintiffs' amended complaint (supplemented, for the sake of completeness, by certain uncontested facts).

The tale began on December 4, 2001, when the Puerto Rico Public Housing Authority (PRPHA) awarded plaintiff-appellant Celta Construction Co. (Celta) a contract to restore the Lirios del Sur housing project in Ponce, Puerto Rico. The funds for that project had been assigned to PRPHA as part of a drug elimination program sponsored by the United States Department of Housing and Urban Development (HUD).

Plaintiff-appellant Miguel Redondo-Borges is Celta's president. In a letter dated May 21, 2002, PRPHA informed Celta that it was annulling the bid award because it had determined that Redondo-Borges (and, therefore, Celta) was a "nonresponsible

-2-

bidder." The agency premised that determination on the past actions of Redondo Construction Company (RCC). According to PRPHA, RCC (a firm in which Redondo-Borges served as an officer) had defaulted on a contract with the agency in 1998. That contract related to the same Lirios de Sur housing project.[1]

The amended complaint claims, without an iota of detail, that in addition to losing the 2001 bid award, Redondo-Borges and his companies have been suspended from participating in public contracts ever since RCC's alleged default. The amended complaint also claims that the plaintiffs have lost unspecified private business because a local newspaper published an account of PRPHA's "nonresponsibility" determination.

## II.  TRAVEL OF THE CASE

Redondo-Borges, his wife, and their conjugal partnership brought the underlying action in the federal district court on May 19, 2003. They later amended their complaint to add Celta as a plaintiff. The amended complaint named two groups of defendants: HUD, the Secretary of HUD, and two lower-ranking HUD officials, Thomas Teresi and Michael Colon (collectively, the federal defendants) comprise one group and PRPHA and three PRPHA officials, Ileana Echegoyen, Jorge Rivera, and Carlos Laboy-Diaz

---

[1]Although Redondo-Borges and RCC challenged the allegations of default, it is unclear what has become of that challenge. The record reveals only that the challenge went to arbitration. There is no information about either the outcome or the status of the arbitration proceeding.

(collectively, the commonwealth defendants) comprise the other. The plaintiffs advanced claims under 42 U.S.C. § 1983 and the Privacy Act of 1974, 5 U.S.C. § 552a, to which they appended claims under local law for breach of contract and the like. The defendants variously moved to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state an actionable claim. See Fed. R. Civ. P. 12(b)(1), (6). The district court referred the motions to a magistrate judge, see Fed. R. Civ. P. 72(b), who recommended dismissal. The plaintiffs objected to the magistrate judge's recommended disposition of the motions.

The district court reviewed the matter de novo. See id. The court ultimately issued a thoughtful opinion in which it (i) dismissed the claims against the federal defendants because the plaintiffs had failed to state any viable cause of action against them; (ii) dismissed the claims for money damages against the commonwealth defendants in their official capacities on the ground of Eleventh Amendment immunity; (iii) dismissed the claims for prospective injunctive relief against the commonwealth defendants in their official capacities because the plaintiffs had failed to state any claim cognizable under section 1983; (iv) dismissed the claims against the commonwealth defendants in their individual capacities based on qualified immunity; (v) dismissed the Privacy Act claims against the commonwealth defendants because the Act applies only to federal agencies; and (vi) elected not to exercise

-4-

supplemental jurisdiction over the remaining claims, which it dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). See Celta Constr. v. HUD, 337 F. Supp. 2d 396, 399-403 (D.P.R. 2004). This timely appeal followed.

## III. DISCUSSION

We subdivide our analysis of the issues presented into several segments. We begin by elucidating some of the legal standards applicable to motions to dismiss.

### A. The Rule 12(b)(6) Framework.

The district court dismissed the plaintiff's action for failure to state a claim upon which relief might be granted. Because there is no heightened pleading standard in civil rights cases, Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66-67 (1st Cir. 2004), a district court considering a Rule 12(b)(6) motion must view the plaintiff's complaint through the prism of Fed. R. Civ. P. 8(a)(2)'s notice pleading requirements. Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005). "A complaint satisfies that standard if it contains 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957)).

The court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability." In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). Those facts may be derived from the complaint, whatever documents are either annexed to it or fairly incorporated into it, and any relevant matters that are susceptible to judicial notice. Centro Medico, 406 F.3d at 5. In that process, however, the court need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

We review the entry of an order of dismissal under Rule 12(b)(6) de novo, applying the same criteria that bound the lower court. Centro Medico, 406 F.3d at 5. The threshold for affirmance is high: "[w]e will affirm a dismissal only if it is transparently clear that the complaint, in light of the facts alleged, engenders no viable theory of liability." Id. at 6.

## B. **Waiver**.

We begin our discussion of the plaintiffs' claims by explaining what is not before us. Few principles are more sacrosanct in this circuit than the principle that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). As a corollary to this

principle, "a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." Id. (internal quotation marks omitted). Even during appellate review of a Rule 12(b)(6) dismissal, which takes place under a set of plaintiff-friendly guidelines, the reviewing court cannot be expected to "do counsel's work, create the ossature for the argument, and put flesh on its bones." Id.

Application of these wise insights narrows the field of our endeavor. In their brief, the plaintiffs completely ignore both the district court's holding on their Privacy Act claim and its scuttling of their supplemental claims. We therefore deem them to have waived any appeal as to those rulings. The only claims that remain for adjudication are those advanced under 42 U.S.C. § 1983. We address those claims in the pages that follow.

**C. Constitutional Claims Against Federal Defendants.**

The plaintiffs try to shoehorn their constitutional claims against the federal defendants into the contours of section 1983. That endeavor has all the hallmarks of a futile gesture: after all, a section 1983 claim normally does not lie against a federal official. See Chatman v. Hernandez, 805 F.2d 453, 455 (1st Cir. 1986) (per curiam) ("Section 1983 applies to persons acting 'under color of state law' and not to persons acting pursuant to federal law."). The plaintiffs allege no facts that might permit a detour around that rule. Cf. Hampton v. Hanrahan, 600 F.2d 600,

-7-

623 (7th Cir. 1979) (explaining that a section 1983 claim may lie against federal officers "when [they] are engaged in a conspiracy with state officials to deprive constitutional rights").

Federal officials sometimes can be liable for constitutional torts committed under color of federal law on terms that bear a family resemblance to those that govern section 1983 actions. The doctoral framework was limned by the Supreme Court in <u>Bivens</u> v. <u>Six Unknown Named Agents of FBN</u>, 403 U.S. 388, 397 (1971). Here, however, even if we give the plaintiffs the benefit of every doubt and recharacterize their claims against the federal defendants as <u>Bivens</u> claims, they would still succumb.

The amended complaint's only allegation against the federal defendants is that "[HUD] was fully aware of [PRPHA's] absolute disregard of award procedures, and did not correct nor adequately supervise the wrongdoing . . . that it was funding." These bald assertions are fundamentally insufficient to support a <u>Bivens</u> claim. Most importantly, the plaintiffs have failed to connect the federal defendants to the actions central to this case, that is, the alleged debarment, PRPHA's "nonresponsible bidder" determination, and the 2002 rescission of the Lirios del Sur bid award. Although the amended complaint indicates that HUD may have had some general duty of oversight vis-à-vis PRPHA, it does not allege any legally enforceable connection between HUD and the supposed deprivation of due process on which the plaintiffs' claims

depend.  Without such a connection, no colorable section 1983 claim exists.[2]

In all events, the language of the amended complaint indicates that, as to the federal defendants, the plaintiffs are attempting to raise a claim of negligent supervision.  Such a claim, if stated, would constitute a tort action within the purview of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, not a Bivens action.  See, e.g., Bolduc v. United States, 402 F.3d 50, 59-62 (1st Cir. 2005).  Yet the plaintiffs have not sued the United States in tort, nor have they alleged compliance with the administrative prerequisites for an FTCA action.  See Cotto v. United States, 993 F.2d 274, 280 (1st Cir. 1993) (describing administrative scheme and explaining that "[e]xhaustion of plaintiffs' administrative remedies is a jurisdictional prerequisite to the prosecution of their FTCA claims").  This omission reinforces our conclusion that the allegations of the amended complaint engender no viable theory of liability against the federal defendants.

---

[2]The plaintiffs made additional allegations against the federal defendants in other submissions to the district court (such as their memorandum in opposition to the motions to dismiss).  These additional allegations are not properly before us.  See Centro Medico, 406 F.3d at 5; Colonial Mortg. Bankers, 324 F.3d at 15-16.  We add, moreover, that even were we to take them into account, the plaintiffs would still fail to state a valid constitutional claim against the federal defendants.  None of these allegations links the federal defendants to any alleged constitutional violation.

## D.   Section 1983 Claims Against Commonwealth Defendants.

In the district court, the plaintiffs effectively conceded that Eleventh Amendment immunity bars a federal court from awarding monetary damages against the commonwealth defendants in their official capacities. Celta Constr., 337 F. Supp. 2d at 401. Yet Eleventh Amendment immunity does not bar prospective injunctive relief against official-capacity defendants. See Rosie D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002); Fred v. Roque, 916 F.2d 37, 39 (1st Cir. 1990) (per curiam). Nor does that doctrine bar relief (whether in the form of money damages or an injunction) against the commonwealth defendants in their individual capacities. See Ex Parte Young, 209 U.S. 123, 159 (1908); Rosie D., 310 F.3d at 234. We proceed to examine these asserted claims.

"Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996). The first condition of a viable section 1983 claim — that the act in question occur "under color of state law" — is satisfied here. Puerto Rico is considered a state for section 1983 purposes, see Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002), and the amended complaint challenges actions attributed to PRPHA (an agency of the Puerto Rican government) and its functionaries (the individual commonwealth defendants). Thus, we focus the lens of our inquiry

on the second condition of a viable section 1983 claim — whether there has been a deprivation of rights secured to the plaintiffs either by the Constitution or by federal law.

In this instance, the plaintiffs claim that they have been deprived of their Fourteenth Amendment right to procedural due process. For that claim to succeed, the plaintiffs must identify a protected property or liberty interest. Centro Medico, 406 F.3d at 7 (citing Board of Regents v. Roth, 408 U.S. 564, 569 (1972)). Because the plaintiffs invoke no liberty interest, we confine our discussion to the existence vel non of a constitutionally protected property interest.[3]

_____

[3]These plaintiffs have not argued a claim premised on a liberty interest. Had they done so and had they alleged sufficient facts to support it, this case might have taken a different turn. See, e.g., Smith & Wesson v. United States, 782 F.2d 1074, 1081 (1st Cir. 1986) ("While the deprivation of the right to bid on government contracts is not a property interest . . ., the bidder's liberty interest is affected when that denial is based on charges of fraud and dishonesty." (quoting Transco Security, Inc. v. Freeman, 639 F.2d 318, 321 (6th Cir. 1981))); Old Dominion Dairy Prods. v. Sec'y of Def., 631 F.2d 953, 962-63 (D.C. Cir. 1980) (holding that the government deprived disappointed bidder of a constitutionally protected liberty interest when it made stigmatizing charges that "effectively foreclosed [the disappointed bidder's] freedom to take advantage of other Government employment opportunities, and barred [it] from all public employment"). But see Siegert v. Gilley, 500 U.S. 226, 233-34 (1991) (holding that statements that "would undoubtedly damage the reputation of one in [plaintiff's] position, and impair his future employment prospects" nevertheless did not amount to a deprivation of a constitutionally protected liberty interest).
Here, however, even if the plaintiffs had advanced a liberty interest argument in their brief, the outcome of our analysis would remain unchanged. The cases that support the existence of a protected liberty interest are relevant only to the plaintiffs' effective debarment claim, which, no matter the interest raised,

To establish a constitutionally protected property interest, a plaintiff "must have more than an abstract need or desire for [a thing] . . . [and] more than a unilateral expectation of it." Roth, 408 U.S. at 577. A plaintiff instead must "have a legitimate claim of entitlement to it." Id. Here, however, we are unable to find any clear statement of the precise property interest that the plaintiffs contend is at stake.

After combing the amended complaint and conducting the robed equivalent of an archeological dig, we conclude that, in a best-case scenario, the plaintiffs can be said to allege three property interests: (i) a property interest associated with their seven-year effective debarment from PRPHA contracting; (ii) a property interest associated with PRPHA's "nonresponsible bidder" determination; and (iii) a property interest associated with the rescission of the Lirios del Sur bid award.[4] We discuss these three possibilities in sequence.

1. **Effective Debarment**. The plaintiffs allege that PRPHA has effectively debarred them from government contracting for

_____

has been pleaded without the necessary factual underpinnings.

[4]The plaintiffs seem to have adopted a semantic strategy in which they consistently refer to the Lirios del Sur bid award as "the contract" (as if the bid award were a full-fledged contract). That word choice leads to some confusion. Insofar as we can tell, what PRPHA allegedly breached was not a full-fledged construction contract (no such contract is alleged to have been entered into between Celta and PRPHA), but, rather, the antecedent bid award. The contract rescission to which we refer, therefore, is the annulment of the bid award and nothing more.

the last seven years without ever promulgating an explicit debarment order.[5]  It is unnecessary for us to reach the issue of whether there is a constitutionally protected property interest associated with effective debarment because the plaintiffs have not alleged sufficient facts to establish the underlying debarment.  We explain briefly.

The amended complaint does little more than describe what the plaintiffs call a suspension.  Although it does not embellish this bare conclusory allegation, we assume, favorably to the plaintiffs, that by suspension they mean effective debarment or even blacklisting.  See supra note 5.  Still, the amended complaint does not anchor this pejorative term in any supporting facts.  In particular, the plaintiffs have not averred that they have bid on any PRPHA contracts other than Lirios del Sur since 1998.  A single incident is insufficient to establish a pattern or practice of exclusion (and, thus, to establish even a de facto debarment).  Cf. Jensen v. Frank, 912 F.2d 517, 523 (1st Cir. 1990) (noting, in the Title VII context, that "[a] single instance of favoritism, even if proved, falls considerably short of showing an ongoing pattern and practice").

_____

[5]The plaintiffs use the term "effective debarment" for the first time in their appellate brief.  At oral argument in this court, they substituted the term "blacklisting."  Neither of these dysphemisms appear in the amended complaint.

The fact that notice pleading governs at the Rule 12(b)(6) stage does not save the plaintiffs' conclusory allegation. "[I]n a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why . . . ." Educadores, 367 F.3d at 68. Notice pleading requirements may be minimal — but "minimal requirements are not tantamount to nonexistent requirements." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). Even within the generous confines of notice pleading, courts must continue to "eschew . . . reliance on bald assertions [and] unsupportable conclusions." Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

The plaintiffs' omissions are especially telling here. Elsewhere in the record, the plaintiffs flatly contradict their conclusory claim of effective debarment. For example, in a memorandum filed in the district court, they asserted that Redondo-Borges, through Celta, "had bid in other PRPHA bids" and added that "it was never argued by the agency that [Redondo-Borges] was a non-responsible contractor." We thus reject the naked mention of an undocumented suspension as a possible source of a constitutionally protected property interest.

**2.** **The "Nonresponsible Bidder" Determination**. The plaintiffs allege that, as the rationale for its rescission of the Lirios del Sur bid award, PRPHA determined that Redondo-Borges was

-14-

nonresponsible and imputed his failings to Celta. To the extent that the plaintiffs' due process claims revolve around a supposed property interest in their "responsible bidder" status, we are unable to perceive how such an interest amounts to anything greater than a unilateral expectation.

A property interest does not vest simply because a government agency has developed a responsibility-determination scheme to aid in bid award decisions. See generally Smith & Wesson v. United States, 782 F.2d 1074, 1081 (1st Cir. 1986) ("Award procedures are not designed to establish private entitlements to public contracts but to produce the best possible contracts for the government."). Thus, a would-be bidder cannot claim a property interest in the responsibility-determination procedure alone. Cf. Navas v. Gonzalez Vales, 752 F.2d 765, 768 (1st Cir. 1985) ("[T]he mere fact that the [government] has promulgated procedural rules by which to make retention decisions does not by itself create a constitutionally cognizable property interest in continued employment . . . .").

By the same token, the plaintiffs' dashed hopes of receiving future government work, without more, cannot yield a constitutionally protected property interest. That is true even if those dashed hopes stem from PRPHA's nonresponsibility declaration. See Walentas v. Lipper, 862 F.2d 414, 419 (2d Cir. 1988) (finding no property interest in a frustrated expectation of future

-15-

employment). The short of it is that the plaintiffs do not have a strong enough claim of entitlement to a "responsible bidder" designation to create a constitutionally protected property interest.

**3. The Rescission of the Bid Award**. Last but not least, the plaintiffs claim a property interest in the Lirios del Sur bid award — an award that PRPHA bestowed on them in 2001 and then revoked in 2002. A recurrent theme in this court's jurisprudence illuminates the path to our holding that the plaintiffs' interest in the bid award does not rise to the level of a constitutionally protected property interest.

We have held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property. See, e.g., Lee v. Life Ins. Co. of N. Am., 23 F.3d 14, 20 n.11 (1st Cir. 1994); Boston Envtl. Sanit. Inspectors Ass'n v. City of Boston, 794 F.2d 12, 13 (1st Cir. 1986) (per curiam); Casey v. DePetrillo, 697 F.2d 22, 23 (1st Cir. 1983) (per curiam); Jimenez v. Almodovar, 650 F.2d 363, 370 (1st Cir. 1981). Many of our sister circuits have adopted a similar stance. See, e.g., S & D Maint. Co. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988) ("An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection."); San Bernardino

<u>Physicians' Servs. Med. Group</u> v. <u>County of San Bernardino</u>, 825 F.2d 1404, 1410 (9th Cir. 1987) (concluding that a contract that "cannot sensibly be distinguished from construction contracts or even purely material supply contracts . . . presents no federal case" under section 1983).[6]

This view of the law makes eminently good sense. To hold otherwise would run the risk of transmogrifying virtually every dispute involving an alleged breach of contract by a state or a state agency into a constitutional case. We eschew so rash a course and hold, consistent with our prior precedents, that the existence of a state contract, simpliciter, does not confer upon the contracting parties a constitutionally protected property interest. <u>See</u> <u>Boston Envtl.</u>, 794 F.2d at 13; <u>see</u> <u>also</u> <u>Wehran-P.R., Inc.</u> v. <u>Municipality of Arecibo</u>, 106 F. Supp. 2d 276, 287 (D.P.R. 2000) (observing correctly that this court has been reluctant to equate mere breaches of contract with due process violations).

---

[6]To be sure, one court of appeals appears to have adopted the opposite position. <u>See</u> <u>Enertach Elec., Inc.</u> v. <u>Mahoning County Comm'rs</u>, 85 F.3d 257, 260 (6th Cir. 1996) ("A constitutionally protected property interest in a publicly bid contract can be demonstrated . . . [when a bidder shows] that it actually was awarded the contract and then deprived of it . . . ."). We not only reject this minority view, but also acknowledge that we are bound to do so by the prior (contrary) decisions of this court. <u>See</u> <u>Eulitt</u> v. <u>Me., Dep't of Educ.</u>, 386 F.3d 344, 349 (1st Cir. 2004) (explaining that "newly constituted panels in a multi-panel circuit [ordinarily] should consider themselves bound by prior panel decisions").

Thus, an alleged breach of such a contract is not per se actionable under section 1983.

There are no special circumstances in this case that might justify a departure from this settled position. See, e.g., Linan-Faye Constr. Co. v. Hous. Auth., 49 F.3d 915, 932 (3d Cir. 1995) (holding that two categories of state contracts can give rise to a constitutionally protected property interest:  those that "confer[] a protected status" and those that "include[] a provision that the state entity can terminate the contract only for cause"). Indeed, the only special circumstances that might be gleaned from the amended complaint are the suspension and the related "nonresponsible bidder" determination, both of which already have been deemed insufficient to ground a constitutionally protected property interest.  See supra Part III(D)(1)-(2).  This is not a situation in which the whole is greater than the sum of the parts.

The amended complaint, stripped of rhetorical flourishes, tells a simple tale:  PRPHA anointed Celta as the successful bidder for a construction project and then, upon its discovery of new information, reversed direction and rescinded the earlier award. Taking the well-pleaded facts in the amended complaint in the light most favorable to the plaintiffs, this story may suffice to state a breach of contract claim.  When cast as a putative constitutional claim, however, the story rings hollow.  Given the paucity of facts, allowing a section 1983 claim in a case like this one would

lead us down a slippery slope to an untenable result: the constitutionalization of all contract law in cases in which a state actor is a party. We decline to take so precipitous a step.

That ends the matter. Because the plaintiffs identify no constitutionally protected property interest, it is unnecessary to delve any deeper into the section 1983 inquiry. By the same token, we need not reach either the issue of qualified immunity or the issue of whether the post-deprivation process available to Celta after the revocation of the bid award satisfied any applicable due process requirement. Without a constitutionally protected interest — and there is none here — the plaintiffs have no hope of stating a viable section 1983 claim.

## IV.   CONCLUSION

We need go no further. If the plaintiffs have alleged any valid claim, it is a breach of contract claim. The district court dismissed that claim without prejudice to a refiling in the commonwealth courts — and the plaintiffs have not challenged the propriety of that ruling. None of the plaintiffs' other (preserved) claims states a cognizable basis on which relief can be granted. Accordingly, we uphold the district court's order of dismissal.

**Affirmed**.