# United States Court of Appeals
## For the First Circuit

No. 06-1084

BENJAMÍN CARRERO-NAZARIO; ANA MARÍA MARTÍNEZ;
CONJUGAL PARTNERSHIP CARRERO-MARTÍNEZ; BENJAMÍN
CARRERO-MARTÍNEZ; RITA CARO CARO; CONJUGAL PARTNERSHIP
CARRERO-CARO; VILLAS DE LA PRADERA, INC. PLAZA RINCÓN, INC.,

Plaintiffs, Appellants,

v.

CARLOS LÓPEZ-BONILLA, individually and as Mayor of the
Municipality of Rincón; DORIS SOTO; CONJUGAL PARTNERSHIP
LÓPEZ-SOTO; MUNICIPALITY OF RINCÓN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jamie Pieras, Jr., U.S. Senior District Judge]

Before

Torruella, Circuit Judge,

Baldock,* Senior Circuit Judge,

and Howard, Circuit Judge.

Joan S. Peters with whom Andrés Guillemard-Noble and Nachman
& Guillemard, were on brief, for appellants.
Jorge Martínez-Luciano with whom Johanna M. Emanuelli-Huertas
and Law Offices of Pedro Ortiz Alvarez, were on brief, for,
appellee, Doris Soto, Conjugal Partnership López-Soto; Municipality
of Rincón.

*Of the Tenth Circuit, sitting by designation.

Rosa Elena Pérez-Agosto, Assistant Solicitor General, Department of Justice, Office of the Solicitor General with whom Salvador J. Antonetti-Stutts, Solicitor General, Mariana D. Negrón-Vargas, Deputy Solicitor General and Maite D. Oronoz-Rodríguez, Deputy Solicitor General, were on brief for appellee López Bonilla in his personal capacity.

July 18, 2007

**HOWARD**, <u>**Circuit Judge**</u>.  This is an appeal of an award of summary judgment to the mayor of Rincón, Puerto Rico (in his individual and official capacities), his wife, their conjugal partnership, and the municipality itself, on claims that they engaged in unlawful political discrimination against two developers, their development company, and related persons and entities.  The principal defendant, the mayor, is Carlos López-Bonilla; the principal plaintiffs, a father-son real estate development team, are Benjamín Carrero-Nazario and Benjamín Carrero-Martínez.  The mayor is a member of Puerto Rico's Popular Democratic Party.   The developers describe themselves as "activists" in Puerto Rico's New Progressive Party and are related by marriage to the former mayor of Rincón, whom López-Bonilla defeated in the November 2000 election.

In 1997, Carrero-Nazario approached the Puerto Rico Industrial Development Company and expressed an interest in purchasing a parcel of land in Rincón owned by the Company.  He wanted to develop a shopping center with a large grocery store. Negotiations ensued and, in June 1999, the parties reached a preliminary agreement.  In November 2000, just following the mayoral election, the Puerto Rico Planning Board approved the project and zoned the property for commercial use.

Shortly after taking office in early 2001, the mayor began a campaign to halt the project.  Over the next two years,

prior to the formalization of the sale (which occurred on May 9, 2003), the mayor repeatedly wrote the Development Company, the Planning Board and others, expressing strong disagreement with the Company's decision to permit the property to be used for the development of commercial, rather than industrial, infrastructure. He also repeatedly suggested that the project only had been made possible because of nepotism -- i.e., that it would not have gotten off the ground without the helpful intercessions of the former mayor, who is the father-in-law of Carrero-Martínez. When he was unable to derail the project, the mayor began to express interest in purchasing the property on behalf of the municipality. The Development Company rebuffed these efforts, explaining that the process was too far along with the developers. Undeterred, the mayor initiated eminent domain proceedings and obtained unanimous resolutions from the appropriate legislative bodies in support of the proposed taking and then funding for the compensation to be made to the developers. So far as we can tell, the eminent domain proceedings are ongoing.

In June 2004, the developers initiated this lawsuit under federal and Puerto Rico law. Their primary allegation, that the mayor's crusade was materially motivated by unlawful political discrimination in violation of the First and Fourteenth Amendments, survived dismissal but prompted a motion for summary judgment from the mayor on a number of grounds. The developers received an

-4-

extension of time to oppose the motion and then, on the day their opposition was due, filed a second motion for a one-day extension because they were experiencing "technical difficulties" in their attorneys' office. Late in the day, the district court denied the motion by margin order. The developers were able to file their opposition and statement of contested facts on time, but not the exhibits in support of their opposition. The following day, the developers filed a motion asking the court to accept their exhibits (which were attached to the motion), explaining that the technical difficulties experienced the prior day "related to [their attorneys'] office scanner." The court denied the motion, again by margin order.

Subsequently, the district court granted the mayor's motion for summary judgment on the political discrimination claim and declined to exercise supplemental jurisdiction over the Puerto Rico claims. In its opinion and order, the court stated that "the uncontested facts permit no inference that the defendants' conduct was motivated by discriminatory animus." In reaching this conclusion, the court explained that, because the developers had not filed any exhibits in support of their opposition to the summary judgment motion, it would apply Local Rule Civ. P. 56 and credit "all the defendants' proposed uncontested facts supported by exhibits which would be admissible at trial." Crucially, however, the court also stated that its conclusion as to animus would be

-5-

unaffected even if it were to take the developers' opposition materials into account.

The developers' appeal starts with an argument that the district court's strict enforcement of the filing deadline was unfair and an abuse of the court's discretion. We will go so far as to say that it would have been preferable had the court explained its harsh enforcement decision. Nevertheless, the judgment should stand, even if we assume an abuse of discretion and credit the evidence the developers attempted to submit, and even if we by-pass a number of alternative grounds for affirmance involving immunity defenses, intervening causes, and the viability of the developers' case theory.

In support of their claimed entitlement to present their political discrimination claim to a jury, the developers rely on the mayor's admittedly unsupportable charges of nepotism, the mayor's acknowledged awareness that the developers were heavily involved with a rival political party, the lack of evidence supporting the mayor's claim that a number of industrial corporations would be interested in locating their operations on the parcel in question, the mayor's failure to establish the unavailability of similarly sized adjoining properties, and the overall irrationality of the mayor's opposition to a project that

was certain to create jobs within the town.[1] But we think it clear that this is not enough to ground a finding that the developers' party membership constituted a "substantial factor or a motivating factor driving" the mayor's opposition to their project. Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 10 (1st Cir. 2005) (quoting Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)) (internal quotation marks and ellipses omitted).

A jury could perhaps find that the mayor's position on the project was unsound and driven by an unfounded concern that the project was nothing more than a boondoggle designed to enrich the former mayor's family. But that is as far as a jury reasonably could go. Such an inference – which is hardly inevitable on the record before us – simply does not, by itself, warrant a further inference that unlawful political discrimination was prompting the mayor's course of conduct. The line between reasonable inference and unwarranted speculation is not always easy to draw, but we are confident about the side of the line on which this case belongs. Assuming that a cause of action for political discrimination could lie against the mayor in circumstances such as these[2] – a matter on

_____

[1]The developers also allege that the mayor supported less worthy projects sponsored by members of his own party, but have failed to support these allegations with admissible evidence.

[2]See, e.g., Padilla-Garcia v. Rodriquez, 212 F.3d 69, 75 (1st Cir. 2000) (noting that "circumstantial evidence . . . could alone create an issue of fact on discriminatory animus").

which we take no position – such a claim does not become trialworthy simply because a jury could find that the defendant elected official knows the political affiliation of those whose project he opposes, that political affiliation is not the same as his own, and a case could be made that the official's position is not grounded in sensible public policy. Otherwise, it would be too easy for a political opponent of an elected official who is negatively affected by a discretionary decision of the official to gum up the machinery of government by bringing a federal civil rights lawsuit challenging the constitutionality of the decision.

**<u>Affirmed</u>**.