**Manuel A. GARCIA–GONZALEZ,** **Plaintiff,**

v.

**Juan C. PUIG–MORALES,** **et al., Defendants.**

**Civil No. 10–1462 (DRD).**

United States District Court, D. Puerto Rico.

Sept. 29, 2011.

Jorge Martinez–Luciano, M.L. & R.E. Law Firm, San Juan, PR, for Plaintiff.

Christian E. Pagan–Cordoliani, Idza Diaz–Rivera, P.R. Department of Justice, San Juan, PR, for Defendants.

## AMENDED OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

### I. PROCEDURAL HISTORY

Pending before the Court is Plaintiff Manuel A. García–González' (hereinafter "Plaintiff") motion for partial summary judgment (Docket No. 31) against the sole remaining Defendant in the instant case, Juan C. Puig–Morales (hereinafter "Defendant"). In his motion for summary judgment and reply brief (Docket Nos. 31, 51), Plaintiff asserts entitlement to judgment as a matter of law on his Section 1983 claims for First and Fourteenth Amendment violations against Defendant. Plaintiff claims that the letter informing him that certain insurance contracts were favorably awarded to him through the government's adjudication process (hereinafter "the adjudication notice") vested him with a constitutionally protected property right towards those contracts. Thus, since Defendant later informed Plaintiff of errors in the adjudication, recanted and ultimately changed the contracts awarded to him, Plaintiff was deprived of due process as he was not afforded adequate notice and an opportunity to be heard (Docket No. 31 at pp. 4–9).

Defendant, in turn, opposes summary judgement, claiming that government agencies may revoke their award of contracts at any time prior to its execution (Docket No. 48 at p. 7). Defendant contends that Puerto Rico law does not protect the award of a contract; therefore, Plaintiff is not bestowed with a property interest until the contract is duly executed; only then is it binding upon parties (*Id.* at p. 8). In addition, Defendant asserts that the *Parratt–Hudson* doctrine applies here as Plaintiff could have availed himself of an adequate post-deprivation remedy, but did not (*Id.* at pp. 9–11). Last, Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted inasmuch as Plaintiff has failed to show Defendant's personal involvement with the alleged due process violation; and, in any event, asserts that he would be entitled to qualified immunity (*Id.* at pp. 11–16). In his opposition to Plaintiff's motion for summary judgement, Defendant requests the court dismiss Plaintiff's Section 1983 claims (*Id.* at p. 3).

### II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico,* 110 F.3d 174, 179

(1st Cir.1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co.*, 116 F.3d at 959–60. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir.2000)(finding that "determinations of motive and intent ... are questions better suited for the jury"). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

However, "[i]f the adverse party does not [file an opposition], summary judgment, if appropriate, shall be entered against the adverse party." FED.R.CIV.P. 56(e). Failure to timely oppose a motion for summary judgment, in and of itself, does not justify entry of summary judgment against a party; therefore, a District Court is "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." *Kelly v. U.S.*, 924 F.2d 355, 358 (1st Cir.1991); *see also Lopez v. Corp. Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir.1991)(holding that, before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law). Thus, a party that fails to oppose a motion for summary judgment does so at its own peril. *See Corrada Betances v. Sea–Land Svc., Inc.*, 248 F.3d 40, 43 (1st Cir.2001); *see also Hebert v. Wicklund*, 744 F.2d 218, 223 (1st Cir.1984).

Nevertheless, even where there is no opposition to a summary judgment, the Court must entertain the motion on the merits and may not grant the motion as a sanction for failure to file an opposition.

*See de la Vega v. San Juan Star,* 377 F.3d 111 (1st Cir.2004). When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *See Cadle Co. v. Hayes,* 116 F.3d 957, 959–60 (1st Cir.1997).

## III. FACTUAL BACKGROUND

When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, in this case favoring Defendant. *See Vera v. McHugh,* 622 F.3d 17 (1st Cir.2010); *see also Agusty–Reyes v. Dept. of Edu.,* 601 F.3d 45, 48 (1st Cir.2010); *see also Cadle Co.,* 116 F.3d at 959–60. However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera,* 622 F.3d at 26 (internal quotations and citation omitted). Further, the Court will not consider hearsay statements nor allegations presented by parties that do not properly provide specific reference to the record. *See* L.Civ.R. 56(e) ("The [C]ourt may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *see also Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.")

The relevant facts are taken from Plaintiff's Statement of Uncontested Material Facts and Defendant's Response In Opposition to Plaintiff's Statement of Uncontested Material Facts (Docket Nos. 31–1, 49). On October 1, 2008, Plaintiff entered into a professional services one-year contract with the Treasury Department for the acquisition of insurance policies for: 1) the Public Buildings Authority; 2) the Americas Port Authority; 3) The Administration of General Services (with regards to the automobile fleet); and 4) the Commonwealth's "Portal del Futuro" Public Corporation. In a letter dated March 20, 2009, Defendant terminated Plaintiff's October 1, 2008 contract and announced that his office would receive new proposals for insurance brokerage contracts between March 25, 2009 and April 17, 2009.

On March 26, 2009, the Treasury Department published the pertinent announcement of Request for Proposals (hereinafter "RFP") regarding the provision of professional services concerning the acquisition of insurance policies for the Commonwealth of Puerto Rico and its instrumentalities. The official RFP document contained the terms and conditions that would govern the proceedings.

Plaintiff submitted a proposal in response to the Treasury Department's request dated April 15, 2009, which was received by said Department's Public Insurance Division on April 17, 2009, within the prescribed term. On May 15, 2009, the Department issued a "Adjudication Notification", thoroughly explaining the process followed in the adjudication of the RFP. Page 2 of the Notice of Adjudication provided the following:

> Through this ADJUDICATION POSTING, you or your company is being notified that you have been **favorably** considered by the Board. In the RESOLUTION Summary, the adjudicated account name(s) and the premium(s) are indicated.

In order to continue with [the] process of formalizing the contract, the producer or his/her duly authorized representative must sign this letter accepting or rejecting the totality of the accounts. The accounts may not be fractionalized.

You must submit an original of the letter by Monday May 25, 2009 together with the required documentation later on, to sign the contract. You must comply strictly with this date. If the signed letter is not submitted by the date indicated, it will be understood that the accounts were rejected in their totality and as a consequence, they will be distributed among the participating producers in a way determined by the Board. Notification of the adjudication of this bidding process is being made to all the producers today. The selected producers have ten days from the adjudication date to formalize the contract.[1] (Emphasis ours).

The accounts adjudicated to Plaintiff were for the purchase of insurance for: 1) the Corrections Administration; 2) the Administration of Juvenile Institutions; 3) the Department of Education; and 4) the Puerto Rico Technological Institute, for a total of estimated insurance premiums, whereby Plaintiff would receive a commission of $7,881,350.

Plaintiff signed the Notice of Adjudication, accepting the totality of the adjudicated accounts. Plaintiff's acceptance of the adjudication was received by the Treasury Department on May 18, 2009. Plaintiff also timely delivered the corresponding complimentary documents.

By letter dated March [sic] 26, 2009 and received by plaintiff on May 28, 2009, signed by Susan Wert–Serrano, Esq. of the Treasury Department, Plaintiff was informed as follows:

We refer to the communication that was delivered on Friday, May 15, 2009 in which you were notified of the determination made by the Puerto Rico Department of the Treasury regarding the granting of contracts for issuing insurance policies for the Government of Puerto Rico, its agencies and public instrumentalities.

The processes carried out produced countless errors in issuing your letter, as well as of other letters that were also issued. Shortly, you will receive or be notified of a new meeting date for the distribution of the corrected letters.[2]

Neither in the text of the letter or through any subsequent communications did anyone from the Treasury Department advise Plaintiff about: 1) the nature of the alleged errors that were found; 2) the specific way in which said errors supposedly affected his adjudication; or 3) his right to an informal proceeding upon which he could be heard on the matter.

Plaintiff never received a corrected letter as promised in the communication. He was never advised that there was anything wrong with the supporting documents submitted with his acceptance of the adjudication. Notwithstanding, Plaintiff was summoned to sign a contract. However, the contract that Plaintiff was asked to sign was for a substantially smaller amount of policies for an instrumentality listed in the May 15, 2009 adjudication. Plaintiff's commissions under this contract (which he rejected) were around $15,000.00, 3% of what was originally awarded in the May 15, 2009 adjudication notice.

In compliance with the mandate of Section 12.020 of the Puerto Rico Insurance

---

1. *See* Certified Translation (Docket No. 40–5 at p. 2).

2. *See* Certified Translation (Docket No. 40–8).

Code, on October 15, 2001, then Commissioner of Insurance, Hon. Fermín Contreras–Gómez and then Secretary of the Treasury Department, Hon. Juan A. Flores–Galarza, jointly approved what became Regulation Number 6363, titled "Contracting and Claims of Bonds and Insurance Policies of the Commonwealth of Puerto Rico".

On September 3, 2002, then Secretary of the Treasury Juan A. Flores–Galarza approved a regulation titled "Regulation for the Acquisition of Property, Non–Professional Services and Public Auctions". Page 4 of the RFP issued by Secretary Puig provided that:

> The Secretary will timely inform to (sic) each Producer about their selection and what steps are to be taken in relation to such selection. Such selections shall be final, **except for the right of the Secretary and API to terminate any designation for reasonable cause.** (Emphasis ours).

Plaintiff never signed the contract of the accounts that were offered to him.

## IV. DISCUSSION

The relevant facts are undisputed. Plaintiff claims that Defendant's adjudication notice favorably awarding him certain bids for insurance policies vested him with a property right over those contracts. Because Defendant later informed Plaintiff of errors in the adjudication of the RFP, without disclosing what those errors were, and ultimately changed the adjudication to one dramatically lower than what was initially awarded, he alleges Fourteenth Amendment violations under the aegis of Section 1983 (Docket No. 31 at pp. 4–9). Plaintiff avers that he was entitled to adequate notice and a pre-deprivation hearing before changing the terms of the adjudication. Defendant, in turn, argues that: (1) Plaintiff failed to establish a property interest for the bids initially awarded to him through the adjudication letter; (2) the Parratt/Hudson doctrine bars relief under the Due Process clause; (3) Plaintiff failed to establish Defendant's personal involvement in the alleged violations to garner Section 1983 liability; and (4) Defendant is entitled to qualified immunity (Docket No. 48 at pp. 4–16). We begin at the beginning.[3]

## A) Section 1983

It is well settled that Section 1983 creates no independent substantive rights, but rather, provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. *See Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Section 1983 applies to the Commonwealth of Puerto Rico and its instrumentalities with the same force as to any state. *See Deniz v. Mun. of Guaynabo,* 285 F.3d 142, 146 (1st Cir.2002); *Martínez v. Colón,* 54 F.3d 980, 984 (1st Cir. 1995).

In order to sustain an action under section 1983, Plaintiff must establish that: (i) the conduct complained of was committed under color of state law[4] and (ii) the conduct worked a denial of rights secured by the Constitution or laws of the United States. *See Cepero–Rivera v. Fagundo,*

---

**3.** Lewis Carroll, Alice in Wonderland, Chapter XXII, " 'Begin at the beginning,' the King said very gravely, 'and go on till you come to the end: then stop.' "

**4.** For section 1983 liability purposes, "a state employee generally acts under color of state law when, while performing in his official capacity or exercising his official responsibilities, he abuses the position given to him by the State." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

414 F.3d 124, 129 (1st Cir.2005); *Collins v. Nuzzo,* 244 F.3d 246, 250 (1st Cir.2001); *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir.2001). Plaintiff must show that there is an actual causal connection linking the defendants' conduct to the alleged deprivation. *See Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989). To establish a "but for" causal connection, Plaintiff must show that the Defendant was personally involved in the constitutional violation, *see Monell v. Department of S.S.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and that the conduct was either intentional, grossly negligent, or amounted to reckless indifference to the plaintiff's constitutional rights. *See Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986).

### B) Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment to the United State Constitution "provides that certain substantive rights-life, liberty, and property-cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). To succeed on procedural due process claim, Plaintiff must show that he had a property or liberty interest, and that Defendant, acting under color of state law, deprived him of that interest without due process. *See id.* at 538, 105 S.Ct. 1487. Moreover, property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Here, although Plaintiff recognizes that Fourteenth Amendment protections may not be invoked under Section 1983 for breach of contract claims, he attempts to draw a tenuous distinction by invoking constitutional protection over his "legitimate entitlement to enter into such a relationship" (Docket No. 31 at p. 9). Plaintiff cites supporting cases from other circuit courts that have found a property interest for proponents of a bidding process who have been awarded the bid. However, the First Circuit Court of Appeals has rejected this interpretation.

Specifically, in *Redondo–Borges v. U.S. Dept. of Housing and Urban Development,* 421 F.3d 1 (1st Cir.2005), Plaintiffs claimed a property interest in the bid award for a project that was later revoked. Flatly repudiating this contention, the First Circuit held that a Plaintiff's interest in the bid award does not rise to the level of a constitutionally protected property interest. *Id.* at p. 10. The Court highlighted:

> We have held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property. *See, e.g., Lee v. Life Ins. Co. of N. Am.,* 23 F.3d 14, 20 n. 11 (1st Cir.1994); *Boston Envtl. Sanit. Inspectors Ass'n v. City of Boston,* 794 F.2d 12, 13 (1st Cir.1986) (per curiam); *Casey v. Depetrillo,* 697 F.2d 22, 23 (1st Cir.1983) (per curiam); *Jimenez v. Almodovar,* 650 F.2d 363, 370 (1st Cir.1981). Many of our sister circuits have adopted a similar stance. *See, e.g., S & D Maint. Co. v. Goldin,* 844 F.2d 962, 966 (2d Cir.1988) ("An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection."); *San Bernardino Physicians' Servs. Med. Group v. County of San Bernardino,* 825 F.2d 1404, 1410 (9th Cir.1987) (concluding that a contract that "cannot sensibly be distin-

# 102

guished from construction contracts or even purely material supply contracts ... presents no federal case" under section 1983).

In its analysis, the First Circuit also noted and rejected the Sixth Circuit's holding in *Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 260 (6th Cir.1996) [5], a case Plaintiff curiously cited in support of summary judgment and in support of his theory that the bid award confers constitutionally protected property rights. The First Circuit clearly elucidated that the Sixth Circuit's minority view was incompatible with the First Circuit's holdings on this issue. *Id.* at n. 6 (To be sure, one court of appeals appears to have adopted the opposite position.) *See Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 260 (6th Cir.1996) ("A constitutionally protected property interest in a publicly bid contract can be demonstrated ... [when a bidder shows] that it actually was awarded the contract and then deprived of it....").  We not only reject this minority view, but also acknowledge that we are bound to do so by the prior (contrary) decisions of this court. *See Eulitt v. Me., Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir.2004) (explaining that "newly constituted panels in a multi-panel circuit [ordinarily] should consider themselves bound by prior panel decisions").

We need go no further. Because Plaintiff is unable to identify a constitutionally protected property interest, he poses no viable Section 1983 claim. Therefore, it is unnecessary and indeed superfluous to delve any further into plaintiff's assertions. By like token, the court need not entertain the issues of whether Defendant's personal involvement, or lack thereof, render him liable under Section 1983; whether the Parratt/Hudson doctrine bars any relief under Fourteenth Amendment; or whether Defendant is entitled to qualified immunity.

## V.  CONCLUSION

For the reasons set forth above, the Court hereby **DENIES** Plaintiffs' partial motion for summary judgment against Defendant.  The Court hereby **GRANTS** Defendant's request to dismiss the Fourteenth Amendment claim, as to property interest.  Should the defendant wish to contest the First Amendment claim, the argument should be well developed in a separate motion for summary judgment. The defendant is granted sixty (60) days to file any and all dispositive motion as to plaintiff's First Amendment claim.

**IT IS SO ORDERED.**

---

**5.** The Sixth Circuit held that a constitutionally protected property interest in a bid contract can be demonstrated by a showing that the bidder was awarded the contract and later was deprived of the same. *Id.*